Daniel **MAGANA–PIZANO**,
Petitioner–Appellant,

v.

**IMMIGRATION AND NATURAL-
IZATION SERVICE**, Respondent–Appellee.

Nos. 97–15678, 97–70384.

United States Court of Appeals,
Ninth Circuit.

Dec. 27, 1999.

Michael Franquinha, Stender & Larkin, Phoenix, Arizona, for the appellant-petitioner.

Hugh G. Mullane, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the appellee-respondent.

Lucas Guttentag, San Francisco, California, for Amicus Curiae, American Civil Liberties Union Foundation.

Lenni B. Benson, New York, New York, for Amici Curiae, Law Professors.

Marc Van Der Hout, and Zachary Nightingale, Van Der Hout & Brigagliano, San Francisco, California, and Nadine Wettstein, Washington, DC, for Amici Curiae, The American Immigration Lawyers Association, and the National Immigration Project of the National Lawyers Guild.

Before: GOODWIN and THOMAS, Circuit Judges, PREGERSON,* District Judge.

THOMAS, Circuit Judge:

This appeal returns to us on remand from the Supreme Court for further consideration in light of *Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (*"American–Arab"*), decided after the issuance of our prior opinion in this case. *See INS v. Magana–Pizano,* —— U.S. ——, 119 S.Ct. 1137, 143 L.Ed.2d 206 (1999). With the guidance of *American–Arab,* we conclude that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996), as amended by Act of Oct. 11, 1996, Pub.L. No. 104–302, 110 Stat. 3656, did not repeal 28 U.S.C. § 2241. This conclusion makes our consideration of the constitutionality of such repeal, as we did in our prior opinion,

* The Honorable Dean D. Pregerson, United States District Judge for the Central District of California, sitting by designation.

unnecessary. We therefore reverse the district court's dismissal of the habeas corpus petition, and remand the case to the district court for further proceedings.

I

The facts and procedural history are detailed in our prior opinion. *See Magana–Pizano v. INS,* 152 F.3d 1213 (9th Cir.), *as amended,* 159 F.3d 1217 (9th Cir. 1998) (*"Magana–Pizano I"*). Daniel Magana–Pizano is a native and citizen of Mexico who entered the United States in 1977, as the five-year old child of a lawful permanent resident. He has remained here since his admission, residing in Southern California and Arizona. In February 1995, he pleaded *nolo contendere* to the charge of being under the influence of cocaine and methamphetamine in violation of section 11550(a) of the California Health and Safety Code, a misdemeanor offense.

On May 17, 1996, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause[1] to Magana–Pizano alleging that he was deportable as a result of this misdemeanor criminal conviction. At his deportation hearing, Magana–Pizano conceded his deportability as a result of the drug conviction, but indicated that he would apply for a discretionary waiver of deportation under section 212(c) of the Immigration and Nationality Act ("INA").

By the time of the deportation hearing, Congress had passed the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) (codified as amended in scattered sections of 8, 15, 18, 22, 28, 40, 42, 50 U.S.C.) ("AEDPA"). Section 440(d) of AEDPA amended INA § 212(c) to eliminate discretionary relief for aliens convicted of most drug-related crimes, including Magana–Pizano's.[2] As a result of this statutory change, the INS filed a motion to pretermit Magana–Pizano's application for relief under INA § 212(c), arguing that section 440(d) of AEDPA and its amendment to section 212(c) were effective as of the date of passage on April 24, 1996. These changes provided that any alien who, like Magana–Pizano, was deportable due to a criminal conviction under 8 U.S.C. § 1251(a)(2)(B), was statutorily ineligible for discretionary relief.

The immigration judge granted the INS motion to pretermit Magana–Pizano's application and ordered Magana–Pizano deported to Mexico. Magana–Pizano appealed this decision to the Board of Immigration Appeals ("BIA"), which sustained the deportation order based on AEDPA changes to INA § 212(c) and the Attor-

1. The Order to Show Cause alleged that Magana–Pizano was deportable under INA § 241(a)(2)(B)(i), codified at 8 U.S.C. § 1251 (1994) (redesignated by IIRIRA § 305(a)(2) as INA § 237(a)(2)(i), to be codified at 8 U.S.C. § 1227(a)(2)(B)(i) (Supp. II 1996)). This section provides that "[a]ny alien who at any time after entry has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance ... is deportable."

2. Section 440(d) of AEDPA modifies 8 U.S.C. § 1182(c) to provide that the Attorney General no longer has the authority to waive deportation of aliens convicted of certain crimes, such as those involving controlled substances. It provides:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than paragraphs (3) and (9)(c)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion in him under section 1181(b) of this title. This subsection shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in section 1251(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1251(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 1251(a)(2)(A)(i) of this title.

ney General's opinion in *In re Soriano,* Int. Dec. 3289, 1996 WL 426888 (BIA June 27, 1996). Magana–Pizano filed with this Court a timely petition for review of the BIA's decision.

Magana–Pizano also filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the District of Arizona. In his habeas petition, he argued that the BIA's decision and interpretation of AEDPA section 440(d) violated the Equal Protection Clause of the Constitution. The district court dismissed the complaint without prejudice for lack of jurisdiction, explaining that the statutory basis for habeas review for aliens in custody pursuant to an order of deportation was repealed by a different section of AEDPA. *See* AEDPA § 401(e), repealing 8 U.S.C. § 1105a(a)(10). Magana–Pizano filed a timely appeal, and we *sua sponte* consolidated both matters.

## II

■ The Supreme Court's decision in *American–Arab* does not alter our analysis of Magana–Pizano's petition for review of the BIA decision holding that he was ineligible for discretionary relief under INA § 212(c). Magana–Pizano challenged the BIA's interpretation of AEDPA section 440(d) and its applicability to his case. In *Magana–Pizano I,* we held that we could not reach the merits of the petition because Congress had repealed our jurisdiction to entertain the petition. We have confirmed this holding in *Briseno v. INS,* 192 F.3d 1320, 1322 (9th Cir.1999).

Immigration proceedings initiated by the INS before IIRIRA's general effective date of April 1, 1997, in which a final deportation or exclusion order was filed after October 30, 1996, are governed by interim transitional rules. *See* IIRIRA § 309(c); *Kalaw v. INS,* 133 F.3d 1147, 1150 (9th Cir.1997).[3] Because the BIA's

decision holding Magana–Pizano statutorily ineligible for relief was issued March 17, 1997, IIRIRA's transitional provisions apply to his case. *See* IIRIRA § 309(c)(4); *Kalaw,* 133 F.3d at 1150.

■ The IIRIRA provision relevant to this appeal, section 309(c)(4)(G), provides:

there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in section 212(a)(2) or section 241(a)(2)(A)(iii), (B), (C), or (D) of the Immigration and Nationality Act (as in effect as of the date of the enactment of this Act), or any offense covered by section 241(a)(2)(A)(ii) of such Act (as in effect on such date) for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 241(a)(2)(A)(i) of such Act (as so in effect).

IIRIRA § 309(c)(4)(G). Under this provision, we do not have appellate jurisdiction over petitions filed by aliens who are deportable because they committed one of the criminal offenses enumerated in IIRIRA section 309(c)(4)(G). *See Briseno,* 192 F.3d at 1322; *Yang v. INS,* 109 F.3d 1185, 1192 (7th Cir.), *cert. denied sub nom., Katsoulis v. INS,* 522 U.S. 1027, 118 S.Ct. 624, 139 L.Ed.2d 605 (1997). Magana–Pizano does not dispute that he is an alien deportable by reason of having been convicted of one of the enumerated offenses. Rather, he argues that the Immigration Judge's and BIA's reading of AEDPA § 440(d) constitute an impermissible retroactive application of the amended statute. Because Magana–Pizano's arguments are not within the narrow scope of our review on direct appeal under IIRIRA's transitional rules, we dismiss his petition for review for lack of jurisdiction.

## III

*American–Arab* does alter our jurisdictional analysis of Magana–Pizano's habeas

---

**3.** The scope and validity of the permanent changes made by IIRIRA are not before us

and we therefore decline to address those issues.

petition; however, it does not change the result. The district court denied Magana–Pizano's habeas corpus petition after concluding that the statutory basis for habeas review for aliens in custody pursuant to an order of deportation had been repealed by AEDPA. In *Magana–Pizano I*, we held that the district court retains jurisdiction under 28 U.S.C. § 2241 when the petitioner has no other judicial remedy. We adhere to that holding, although for different reasons.

Prior to the passage of AEDPA and IIRIRA, aliens wishing to challenge the constitutionality of a final order of deportation via habeas corpus did so using one of two general methods: (1) proceeding pursuant to INA § 106(a)(10); or (2) proceeding pursuant to the general statutory habeas provision of 28 U.S.C. § 2241.[4] Prior to its repeal by AEDPA, INA § 106(a) provided the primary means of habeas review.[5] Given the repeal of INA § 106, Magana–Pizano filed his habeas petition pursuant to 28 U.S.C. § 2241.

While Magana–Pizano's appeal was pending, a panel of this Court held that IIRIRA had repealed the remedy of habeas corpus in immigration cases, including a remedy under 28 U.S.C. § 2241. *See Hose v. INS*, 141 F.3d 932, 935 (9th Cir.1998). Against the backdrop of that decision, we were faced in *Magana–Pizano I* with the question of whether that repeal violated the Suspension Clause, and concluded that elimination of all judicial review of executive deportation violated the Constitution. *See Magana–Pizano I*, 152 F.3d at 1220. Because the Suspension Clause prevented Congress from eliminating access to general statutory habeas relief, we held that Magana–Pizano could pursue his remedies under 28 U.S.C. § 2241. *See id.* at 1222.

However, other circuits construed IIRIRA differently from the *Hose* panel, holding that, as a matter of statutory construction, IIRIRA did not repeal 28 U.S.C. § 2241.[6] Although it considered the statute in a different context, the Supreme Court effectively resolved the inter-circuit conflict by construing 8 U.S.C. § 1252(g) in *American–Arab*. In *American–Arab*, the Supreme Court rejected the government's claim that 8 U.S.C. § 1252(g) "covers the universe of deportation claims." Rather, the Court held:

> In fact, what § 1252(g) says is much narrower. The provision applies only to three discrete actions that the Attorney General may take: her "decision or action" to "commence proceedings, adjudicate cases or execute removal orders."

*American–Arab*, 119 S.Ct. at 943.

After construing the statutory reach of 8 U.S.C. § 1252(g), the Supreme Court de-

---

**4.** 28 U.S.C. § 2241 provides that writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. Among other things, it affords a remedy through a writ of habeas corpus to persons in custody in violation of the Constitution or laws or treaties of the United States.

**5.** Enactment of the INA § 106(a)(10) habeas remedy did not supplant the district court's general habeas corpus jurisdiction under 28 U.S.C. § 2241. Section 106 was enacted in 1961, after which we held that district courts had jurisdiction under *both* INA § 106(a)(10) and 28 U.S.C. § 2241 to review a final order of deportation, including the denial of discretionary relief pursuant to INA § 212(c). *See Sotelo Mondragon v. Ilchert*, 653 F.2d 1254, 1255 (9th Cir.1980).

**6.** *See Pak v. Reno*, 196 F.3d 666, 673–74 (6th Cir.1999); *Requena–Rodriguez v. Pasquarell*, 190 F.3d 299, 306 (5th Cir.1999); *Jurado–Gutierrez v. Greene*, 190 F.3d 1135, 1146–47 (10th Cir.1999); *Selgeka v. Carroll*, 184 F.3d 337, 342 (4th Cir.1999); *Shah v. Reno*, 184 F.3d 719, 724 (8th Cir.1999); *Sandoval v. Reno*, 166 F.3d 225, 238 (3d Cir.1999); *Henderson v. INS*, 157 F.3d 106 (2d Cir.1998), cert. denied sub nom., *Reno v. Navas*, —— U.S. ——, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999); *Goncalves v. Reno*, 144 F.3d 110, 117 (1st Cir.1998), cert. denied, —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999); *but see LaGuerre v. Reno*, 164 F.3d 1035, 1040 (7th Cir.1998), cert. denied, —— U.S. ——, 120 S.Ct. 1157, —— L.Ed.2d —— (2000). Compare *Richardson v. Reno*, 180 F.3d 1311 (11th Cir.1999), petition for cert. filed, No. 99–887 (U.S. Nov. 23, 1999), with *Mayers v. U.S. Dep't of INS*, 175 F.3d 1289, 1297 (11th Cir.1999).

nied certiorari petitions in *Goncalves* and *Henderson* and vacated the judgment in *Magana–Pizano I,* instructing us to reconsider our decision in light of *American–Arab.*

Subsequently, the panel decision in *Hose* was vacated, and that case was reheard en banc. *See Hose v. INS,* 161 F.3d 1225 (9th Cir.1998). Upon rehearing en banc, we concluded that following *American–Arab,* the *Hose* panel's construction of 8 U.S.C. § 1252(g) was no longer viable. *See Hose v. INS,* 180 F.3d 992, 994 (9th Cir.1999) (en banc). However, we expressly declined to decide what habeas corpus remedies remained under IIRIRA. *See id.* at 995 n. 2. That question was reserved for resolution by this panel.

Thus, the threshold question before us on remand is whether IIRIRA repealed the statutory habeas corpus remedy contained in 18 U.S.C. § 2241. We join the majority of our sister circuits in concluding that it did not.

Although AEDPA repealed INA § 106(a)(10), the primary avenue of habeas relief in immigration cases, neither AEDPA nor IIRIRA expressly repealed statutory habeas corpus relief pursuant to 28 U.S.C. § 2241. The theory that 8 U.S.C. § 1252(g) eliminated all habeas corpus relief (including, by implication, 28 U.S.C. § 2241) cannot be reconciled with the Supreme Court's narrow construction of 8 U.S.C. § 1252(g) in *American–Arab.*

Indeed, throughout the history of our Republic, the Supreme Court has consistently rejected attempts to repeal statutory habeas corpus jurisdiction by implication. *See Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996); *Ex parte Yerger,* 75 U.S. (8 Wall.) 85, 105, 19 L.Ed. 332 (1869). The Court's pronouncement in *Felker* is instructive. In *Felker,* the Court addressed whether § 106(b) of the AEDPA—which prohibits inmates from filing successive habeas petitions in the district courts absent permission from a court of appeals—operated to eliminate the Supreme Court's original jurisdiction

to entertain a habeas petition. *See Felker,* 518 U.S. at 658, 116 S.Ct. 2333. Section 106(b) also provides that a decision by a court of appeals denying permission to file a successive habeas petition "shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari." *See* AEDPA § 106(b) (to be codified at 28 U.S.C. § 2244(b)(3)(E)). Despite this provision, the Supreme Court unanimously held that it retained jurisdiction to entertain original habeas petitions pursuant to 28 U.S.C. § 2241. The Court explained that "[n]o provision ... mentions our authority to entertain original habeas petitions [under § 2241]." *Felker,* 518 U.S. at 660, 116 S.Ct. 2333.

■ Like the provision at issue in *Felker,* IIRIRA § 242(g) limits judicial review, but does not refer to habeas jurisdiction under 28 U.S.C. § 2241. Presumably, the holding in *Felker* placed Congress on notice that it could repeal habeas jurisdiction under § 2241 only by express command, and not by implication. *See Pak,* 196 F.3d at 672–73. That it failed to make explicit reference to section 2241, coupled with the Supreme Court's guidance in *American–Arab,* lead us unerringly to the conclusion that IIRIRA did not strip the district court of jurisdiction over Magana–Pizano's habeas petition under 28 U.S.C. § 2241.

■ Furthermore, the scope of habeas review extends to both constitutional and statutory questions. 28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are "in custody in violation of the Constitution or laws or treaties of the United States." *See Henderson,* 157 F.3d at 121; *Goncalves,* 144 F.3d at 125.

■ Accordingly, we join the vast majority of our sister circuits, and conclude that neither AEDPA nor IIRIRA repealed statutory habeas remedies other than INA § 106(a)(10). Thus, 28 U.S.C. § 2241 remains an available remedy to those challenging executive detention.

## IV

■ The INS argues that to the extent the federal courts have any jurisdiction over Magana–Pizano's habeas petition, such jurisdiction lies with the Court of Appeals. We rejected this theory in *Magana–Pizano I, see* 152 F.3d at 1222, and nothing in *American–Arab* changes our analysis. The plain language of 28 U.S.C. § 2241 provides an unambiguous grant of jurisdiction to the district courts, stating, "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a) (1994). Indeed, bifurcated review of immigration matters has been the norm, not the exception. *Compare Foti v. INS,* 375 U.S. 217, 221, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963) (Court of Appeals review of discretionary relief) and *Giova v. Rosenberg,* 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964) (Court of Appeals review of motion to reopen), *with Cheng Fan Kwok v. INS,* 392 U.S. 206, 216, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968) (district court review of denial of stay of deportation). Moreover, it is appropriate that any evidentiary hearings with respect to habeas matters take place at the district court level which is uniquely positioned to handle such issues and develop the appropriate record. Magana–Pizano's petition raises factual questions which are best committed to the wisdom of the district court for resolution.

Regardless of these policy considerations, in the end the choice of jurisdictional assignment is a Congressional one, and Congress vested the district courts with the power to review habeas corpus petitions. It is not only a proper choice, but one which we lack the power to divest.

## V

■ The antecedent issue raised by Magana–Pizano's habeas petition is whether AEDPA § 440(d), which precludes discretionary relief under INA § 212(c) for aliens convicted of drug-related crimes, applies to him.[7] The question of whether AEDPA applies to deportation proceedings pending at the time of enactment has mostly been settled by other circuits, who have concluded that it does not. *See Wallace v. Reno,* 194 F.3d 279, 287 (1st Cir. 1999); *Pak,* 196 F.3d at 673–74; *Mayers,* 175 F.3d at 1301–04; *Sandoval,* 166 F.3d at 242; *Henderson,* 157 F.3d at 129–30; *see also Shah,* 184 F.3d at 724.

This is not the first occasion we have had to examine AEDPA's effective date. In *Jeffries v. Wood,* we examined Title I of AEDPA [8] and concluded based on the statutory structure and history that the provisions of AEDPA at issue could not be applied to habeas petitions filed before AEDPA's effective date. *See* 114 F.3d 1484, 1494–99 (9th Cir.), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586, 139 L.Ed.2d 423 (1997). A similar analysis applies to the provisions of Title IV, with a similar result.

■ We begin with the presumption, "deeply rooted in our jurisprudence," that legislation applies prospectively. *Landgraf v. USI Film Prods.,* 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). With this presumption as a backdrop, we then determine whether Congress has prescribed the statute's proper temporal reach. *See id.* at 280, 114 S.Ct. 1483. Here, as in *Jeffries,* we conclude that Con-

---

7. This is a statutory claim cognizable in habeas proceedings as a claim that one "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241; *see also Mayers,* 175 F.3d at 1300; *Sandoval,* 166 F.3d at 238; *Henderson,* 157 F.3d at 122.

8. AEDPA is divided into nine titles, namely: Title I (Habeas Corpus Reform); Title II (Jus-

tice for Victims); Title III (International Terrorism Prohibitions); Title IV (Terrorist and Criminal Alien Removal and Exclusion); Title V (Nuclear, Biological, and Chemical Weapons Restrictions); Title VI (Implementation of Plastic Explosives Convention); Title VII (Criminal Law Modifications to Counter Terrorism); Title VIII (Assistance to Law Enforcement) and Title IX (Miscellaneous).

gress has. Because AEDPA has numerous effective date provisions, even within chapters, AEDPA's structure has been important in divining intent. *See Lindh v. Murphy,* 521 U.S. 320, 326, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Jeffries,* 114 F.3d at 1495.

The structure of Title IV clearly indicates that section 440(d) was not intended to apply to pending deportation cases. Title IV restricts discretionary relief from deportation for two categories of aliens: (1) those involved in terrorism and (2) those convicted of certain crimes, including drug-related crimes. For those in the first category,[9] AEDPA became effective as to all pending cases in which "final action" had not yet been taken. *See AEDPA § 413(g).*[10] AEDPA provided a similar effective date for its new provisions concerning asylum applications from alien terrorists. *See AEDPA § 421.* There is no similar effective date established for aliens in the second category, namely, those like Magana–Pizano who have been convicted of designated crimes. We found a similar structure dispositive of congressional intent in Title I of AEDPA. *See Jeffries,* 114 F.3d at 1495. The Supreme Court reached the same conclusion in *Lindh. See* 521 U.S. at 327, 117 S.Ct. 2059. As the Supreme Court put it in *Lindh:* "Nothing, indeed, but a different intent explains the different treatment." *Id.* at 329, 117 S.Ct. 2059. The fact that AEDPA was expressly made applicable to pending deportation cases involving alien terrorists, but not expressly applicable to those deportable by reason of criminal conviction, was dispositive for those circuits who have examined the issue. *See Pak,* 196 F.3d at 675–76; *Mayers,* 175 F.3d at 1302–03;

*Sandoval,* 166 F.3d at 241; *Henderson,* 157 F.3d at 129–30; *Goncalves,* 144 F.3d at 128–129.

In addition, the legislative history supports the conclusion that AEDPA § 440(d) was not intended to apply to pending deportation proceedings. The original Senate bill contained express language making the provision which became AEDPA § 440(d) retroactive. *See* 141 Cong. Rec. S7553, 7559 (daily ed. May 25, 1995) (containing text of Senate's version of AEDPA, and including in § 303 the provisions which eventually became included in AEDPA § 440). However, this language was eliminated by the conference committee and not included in the final bill. *See* H.R.Rep. No. 104–518, at 119 (1996), *reprinted in* 1996 U.S.C.C.A.N. 944, 952 (adopting § 303(e)(4) of Senate bill without adopting the retroactivity provision contained in § 303(f)). "A contrast in statutory language is 'particularly telling' when it represents a decision by a conference committee to resolve a dispute in two versions of the bill, and the committee's choice is then approved by both Houses of Congress." *Goncalves,* 144 F.3d at 132 (citing *FEC v. NRA Political Victory Fund,* 513 U.S. 88, 95, 115 S.Ct. 537, 130 L.Ed.2d 439 (1994)). Other circuits have also found this legislative history persuasive. *See Pak,* 196 F.3d at 675–76; *Mayers,* 175 F.3d at 1304; *Sandoval,* 166 F.3d at 241; *Henderson,* 157 F.3d at 130.

■■■■ Given our own analysis, and the weight of authority from other circuits, we conclude that AEDPA § 440(d) cannot be applied to deportation cases pending on the date AEDPA became law.[11]

**9.** An alien terrorist is defined as one "who has engaged, is engaged, or at any time after entry engages in any terrorist activity." AEDPA § 401(a).

**10.** In full, the statute reads: "The Amendments made by this section shall take effect on the date of the enactment of this Act and shall apply to applications filed before, on or after such date if final action has not been

taken on them before such date." AEDPA § 413(g).

**11.** The government urges that we give deference to the Attorney General's decision in *Soriano,* which reached the opposite conclusion. This argument has been rejected by all other circuits to consider it. *See Jurado–Gutierrez,* 190 F.3d at 1147–48; *Shah,* 184 F.3d at 724; *Sandoval,* 166 F.3d at 239–40. Because the issue presented is a question of pure

## VI

■ There remains one additional issue regarding the potential retroactive application of AEDPA, namely, whether it applies to crimes for which the alien pled guilty before AEDPA's enactment, but where deportation proceedings were initiated after AEDPA's effective date. Where Congress provides no express command as to the temporal reach of a statute, as is the case with this issue, *Landgraf* instructs us to "determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." 511 U.S. at 280, 114 S.Ct. 1483. The inquiry into whether a statute operates retroactively requires a "common sense, functional judgment" about "whether the new provision attaches new legal consequences to events completed before its enactment." *See Martin v. Hadix,* 527 U.S. 343, 119 S.Ct. 1998, 2006, 144 L.Ed.2d 347 (1999) (quoting *Landgraf,* 511 U.S. at 270, 114 S.Ct. 1483). If so, then *"Landgraf's* default rule would deny application" of the statute "when a retroactive effect would otherwise result." *Lindh,* 521 U.S. at 326, 117 S.Ct. 2059.

In general, denying eligibility for discretionary relief from deportation on the basis of past criminal convictions does not constitute an impermissible retroactive application of a statute. *See Samaniego–Meraz v. INS,* 53 F.3d 254, 256 (9th Cir.1995). It is difficult to argue, for example, that a convict would have refrained from committing the criminal act if he had just known of the potential for future adverse deportation consequences.

However, the same cannot necessarily be said for decisions to enter a plea of guilty or *nolo contendere.* That an alien charged with a crime involving controlled substances would factor the immigration consequences of conviction in deciding whether to plead or proceed to trial is well-documented. *See Wallace v. Reno,* 24 F.Supp.2d 104, 110 (D.Mass.1998), *aff'd,* 194 F.3d 279 (1st Cir.1999); *Mojica v. Reno,* 970 F.Supp. 130, 177 (E.D.N.Y. 1997), *aff'd in part, dismissed in part, Henderson v. INS,* 157 F.3d 106 (2d Cir. 1998). For example, the district court in *Wallace* noted that it was widely recognized as a violation of an attorney's professional duty to his client not to advise him of the immigration consequences of a plea or conviction. *See Wallace,* 24 F.Supp.2d at 110; *see also Mojica,* 970 F.Supp. at 177; *People v. Barocio,* 216 Cal.App.3d 99, 264 Cal.Rptr. 573, 578–79 (1989).

Indeed, many states require a court to advise a defendant of the immigration consequences of the plea, or risk vacation of the conviction. *See, e.g.,* Cal.Penal Code § 1016.5 (imposing statutory duty upon judiciary to warn aliens about immigration consequences of guilty plea); Or.Rev.Stat. § 135.385(2)(d) (same); Wash. Rev.Code Ann. § 10.40.200 (same); *People v. Gontiz,* 58 Cal.App.4th 1309, 68 Cal.Rptr.2d 786 (1997) (court must inform defendant of all immigration consequences as required by statute); *People v. Soriano,* 194 Cal. App.3d 1470, 240 Cal.Rptr. 328, 336 (1987) (allowing defendant to withdraw guilty plea for failure to advise of immigration consequences).

Thus, prior to AEDPA, a legal permanent resident alien could plead guilty or *nolo contendere* after receiving assurances in open court that the entry of the plea would not have any adverse immigration consequences. In fact, that might be the motivation for entering into the plea bargain. To those aliens who entered a plea in reliance upon representations of depor-

---

law and does not implicate agency expertise in any meaningful way, we need not defer under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 865, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), to the Attorney General's interpretation. *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 446, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987).

tation consequences, the alteration in the law would severely disturb their settled expectations.

We also note that, until the passage of IIRIRA, "the definition of 'conviction' for immigration purposes had been a fluid one." *In re Roldan–Santoyo,* Int. Dec. 3377, 1999 WL 126433 (BIA 1999).[12] In fact, there was no statutory definition of what constituted a "conviction" for deportation purposes, even under AEDPA.[13]

██ For all these reasons, applying new rules to past guilty or *nolo contendere* pleas has the potential of attaching new legal consequences to past decisions. In such a case, application of AEDPA § 440 would, in fact, "disrupt[ ] settled expectations and actions taken in reliance on them." *See Jeffries,* 114 F.3d at 1494. We, of course, cannot say that this is true uniformly. Indeed, one would assume that such a showing could only be made in a rare circumstance. Thus, we decline to hold as a matter of law that AEDPA § 440(d) does not apply to pre-enactment guilty or *nolo contendere* pleas to otherwise qualifying offenses. Accordingly, we join the other circuits who have considered

the issue in concluding that, as a general rule, AEDPA does apply in such circumstances.[14] However, we leave open the possibility that, under a specific factual showing that a plea was entered in reliance on the availability of discretionary waiver under § 212(c), a petitioner may be able to establish that AEDPA § 440(d) has an impermissible retroactive application as to him. *Cf. Burris v. Parke,* 95 F.3d 465, 468–69 (7th Cir.1996) (en banc) (petitioner's detrimental reliance on ability to file second successive habeas petition rendered AEDPA § 106(b)(2) retroactive). In doing so, we employ our "sound instinct" in applying the "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Landgraf,* 511 U.S. at 270, 114 S.Ct. 1483.

### VII

In summary, we deny for lack of jurisdiction Magana–Pizano's petition for review. We reverse the district court's dismissal for lack of jurisdiction of Magana–Pizano's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. On the merits of Magana–Pizano's claim,[15] we hold

---

12. *See, e.g., Pino v. Landon,* 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239 (1955); *In re Ozkok,* 19 I & N Dec. 546, 551–52, 1988 WL 235459 (BIA 1988); *In re L–R–,* 8 I & N Dec. 269, 270, 1959 WL 11561 (BIA 1959). In fact, in *Roldan–Santoyo,* the BIA took the position that IRRIRA changed immigration law to allow a vacated conviction to serve as a basis for deportation, in contradiction of our prior decisions in *Wiedersperg v. INS,* 896 F.2d 1179, 1181–82 (9th Cir.1990) and *Estrada–Rosales v. INS,* 645 F.2d 819, 821 (9th Cir. 1981).

13. In IIRIRA, Congress for the first time clarified that guilty and *nolo contendere* pleas would be considered convictions. *See* IIRIRA § 322(a). Although Congress expressly applied the new definition retroactively, *see* IIRIRA § 322(c), the transitional rules govern this action.

14. Many circuits have expressly left open the question of whether AEDPA § 440(d) applies to cases in which "the alien pled guilty to the crime before AEDPA's enactment date but a deportation proceeding had not yet be-

gun"—precisely Magana–Pizano's situation. *See Wallace,* 194 F.3d at 287; *Henderson,* 157 F.3d at 128–29 & n. 28. Those circuits that have addressed the question squarely, however, have concluded that pre-AEDPA convictions can trigger AEDPA § 440(d). *See Requena–Rodriguez,* 190 F.3d at 307–08; *DeSousa v. Reno,* 190 F.3d 175, 186–87 (3d Cir.1999); *Jurado–Gutierrez,* 190 F.3d at 1150; *Turkhan v. Perryman,* 188 F.3d 814, 827–28 (7th Cir.1999). No circuit has squarely addressed an individual case in which the petitioner based his claim on factual reliance on pre-AEDPA INA § 212(c).

15. In addition to the retroactivity claim, Magana–Pizano also argues that AEDPA § 440(d) violates the Equal Protection Clause, and that his case is factually and legally distinguishable from *U.S. v. Estrada–Torres,* 179 F.3d 776, 778 (9th Cir.1999). However, we need not reach this issue because resolution of the question of retroactivity may make its consideration unnecessary, and there are potential factual issues associated with the claim best examined in the first instance by the district court.

that AEDPA § 440(d)'s bar of discretionary relief previously afforded by INA § 212(c) should not apply to aliens whose deportation proceedings were pending when AEDPA became law and to those who can demonstrate that they entered guilty or *nolo contendere* pleas in reliance upon the relief afforded by INA § 212(c). However, we also hold that, absent a showing of specific reliance, AEDPA applies to those aliens who were convicted of crimes prior to the enactment of AEDPA, but who were not placed in deportation or exclusion proceedings until after AEDPA's effective date. We remand this case to the district court for determination of whether, under the specific facts of this case, AEDPA applies to Magana–Pizano. If it does, then the district court should proceed to the merits of Magana–Pizano's other claims. Otherwise, the writ should issue.

PETITION FOR REVIEW DISMISSED; JUDGMENT REVERSED AND REMANDED