**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

AKIO KAWASHIMA; FUSAKO
KAWASHIMA,
                    *Petitioners,*

              v.

ERIC H. HOLDER JR., Attorney
General,
                    *Respondent.*

No. 04-74313

Agency Nos.
A38-554-590
A38-554-591

AKIO KAWASHIMA; FUSAKO
KAWASHIMA, aka Fusako Nakajima,
                    *Petitioners,*

              v.

ERIC H. HOLDER JR., Attorney
General,
                    *Respondent.*

No. 05-74408

Agency Nos.
A38-554-590
A38-554-591

ORDER AND
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 8, 2007—Pasadena, California

Filed January 27, 2010

Before: Diarmuid F. O'Scannlain, Edward Leavy, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge O'Scannlain

1653

**COUNSEL**

Judith L. Wood, Law Offices of Judith L. Wood, Los Angeles, California, argued the cause for the Petitioner, and filed briefs; Todd Beacraft, Law Offices of Judith L. Wood, Los Angeles, California, was on the briefs.

Nancy Freedman, Office of Immigration Litigation, Washington DC, argued the cause for the Respondents; Peter D. Keisler, Assistant Attorney General, Civil Division, M. Jocelyn Lopez Wright, Assistant Director, and James A. Hunolt, Senior Litigation Counsel, Office of Immigration Litigation, Washington DC, were on the brief.

## ORDER

The opinion filed on July 1, 2008, and appearing at 530 F.3d 1111 (9th Cir. 2008) is withdrawn. The superseding opinion will be filed concurrently with this order.

The government's "Petition for Rehearing En Banc" is DENIED as moot.

The parties may file new petitions for rehearing or rehearing en banc as provided by Federal Rule of Appellate Procedure 40.

---

## OPINION

O'SCANNLAIN, Circuit Judge:

We are called upon to decide whether petitioners' convictions for subscribing to a false statement on a tax return and for aiding and assisting in the preparation of a false tax return qualify as "aggravated felonies" that subject them to removal under the relevant immigration laws.

This is our third published opinion in this case. In our first opinion, *Kawashima v. Gonzales*, 503 F.3d 997 (9th Cir. 2007), *withdrawn* 503 F.3d 1111 (9th Cir. 2008) ("*Kawashima I*"), we conducted a limited examination of the record of petitioners' convictions to answer such question. One day after our panel opinion was filed, our en banc court decided *Navarro-Lopez v. Gonzales*, 503 F.3d 1063 (9th Cir. 2007) (en banc), which caused us to reconsider. We published a second opinion, *Kawashima v. Mukasey*, 530 F.3d 1111 (9th Cir. 2008), *withdrawn* ___ F.3d ___ (9th Cir. 2010) ("*Kawashima II*"), in which we answered the question by applying *Navarro-Lopez* to Kawashima's conviction in light of our circuit's existing caselaw construing the statute defining "aggravated felony."

After we published our second opinion, the government filed a petition for rehearing en banc. While the government's petition was pending before us, the Supreme Court granted certiorari in *Nijhawan v. Attorney General*, 523 F.3d 387 (3d Cir. 2008), *cert. granted*, 129 S. Ct. 988 (2009). Like the case before us, *Nijhawan* concerned whether a particular conviction for a financial offense constitutes an "aggravated felony" under relevant immigration laws. After the Court issued its opinion, *Nijhawan v. Holder*, 129 S. Ct. 2294 (2009), we ordered the parties to file supplemental briefs on *Nijhawan*'s impact on the case before us. In light of this recent guidance from the Court, we issue this hopefully final opinion in this litigation.

I

Akio Kawashima and Fusako Kawashima[1] are natives and citizens of Japan. The Kawashimas were admitted to the United States as lawful permanent residents on June 21, 1984.

In 1997, Mr. Kawashima pled guilty to subscribing to a false statement on a tax return, in violation of 26 U.S.C. § 7206(1). In his plea agreement, he stipulated that the "total actual tax loss" for the purpose of determining his offense level under the Sentencing Guidelines was $245,126. Mr. Kawashima further conceded that he could be ordered to pay the same amount in restitution. On the same date, Mrs. Kawashima pled guilty to aiding and assisting in the preparation of a false tax return, in violation of 26 U.S.C. § 7206(2). Her plea agreement was not included in the record before us.

On August 3, 2001, the Immigration and Naturalization Service[2] issued separate Notices to Appear to the Kawashimas

---

[1]We refer to Akio as "Mr. Kawashima" and Fusako as "Mrs. Kawashima." We refer to Akio and Fusako collectively as the "Kawashimas."

[2]On March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an agency under the U.S. Department of Justice and its functions were transferred to the Bureau of Immigration and Customs Enforcement within the newly-formed Department of Homeland Security. We refer to the INS and its successor as the "Service."

alleging that the couple was removable because their prior convictions constituted aggravated felonies under 8 U.S.C. § 1101(a)(43)(M)(i) ("subsection M(i)") (defining as an aggravated felony any offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000"). *See id.* § 1227(a)(2)(A)(iii) (stating that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable").[3]

After holding a removal hearing, an Immigration Judge ("IJ") concluded that the Kawashimas' convictions were aggravated felonies under subsection M(i). Accordingly, the IJ found the Kawashimas removable, denied their motion to terminate the proceedings, and ordered that they be removed to Japan.

The Kawashimas appealed the decision, and the Board of Immigration Appeals ("BIA") remanded because the transcript containing the testimony of the hearing and the IJ's oral decision was defective. After further proceedings, the IJ again denied the Kawashimas' motion to terminate proceedings and ordered them removed to Japan. The BIA affirmed and adopted the IJ's decision.

The Kawashimas subsequently filed a motion to reopen seeking waiver of inadmissibility under the Immigration and Nationality Act ("INA") § 212(c), 8 U.S.C. § 1182(c) (repealed 1996). The BIA denied the motion as untimely.

The Kawashimas timely filed separate petitions for review of the BIA's affirmance of the IJ's removal order and the BIA's denial of their motion to reopen. We consolidated the petitions for review pursuant to 8 U.S.C. § 1252(b)(6). We consider each in turn.

---

[3]The Notice to Appear also alleged that the Kawashimas were removable for having been convicted of aggravated felonies under § 1101(a)(43)(M)(ii), but that allegation is not before us here.

II

A

We are faced with the task of determining whether Mr. Kawashima's conviction for willfully making and subscribing to a false statement on a tax return, in violation of § 7206(1), and Mrs. Kawashima's conviction for aiding and assisting in the preparation of a false tax return, in violation of § 7206(2), constitute aggravated felonies. Section 1101(a)(43)(M) defines an "aggravated felony" to include "an offense that (i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000; or (ii) is described in section 7201 of Title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i)-(ii).

As a threshold statutory interpretation matter, we must decide whether tax offenses other than those described in § 7201 qualify as aggravated felonies under subsection (M)(i).[4] In their supplemental brief to this court, the Kawashimas renew their argument, first raised in their opining brief, that subsection (M)(i) is inapplicable in this case. They reason that subsection (M)(ii)'s specific reference to § 7201 indicates Congress's intent to exclude all federal tax offenses from the definition of aggravated felonies under the more general subsection (M)(i). In our initial opinion in this case, we rejected this argument. *Kawashima v. Gonzales* ("*Kawashima I*"), 503 F.3d 997, 999-1001 (9th Cir. 2007). Our ultimate view of this issue remains unchanged.

**[1]** The plain text of subsection (M)(i) sets forth two

---

[4]The Kawashimas' convictions do not constitute aggravated felonies under subsection (M)(ii) because that provision is limited to tax offenses in violation of § 7201. Mr. Kawashima was convicted under § 7206(1) and Mrs. Kawashima was convicted under § 7206(2). *See United States v. Roselli*, 366 F.3d 58, 62 n.5 (1st Cir. 2004).

requirements for an offense to qualify as an aggravated felony. First, the offense must "involve fraud or deceit." Second, the "loss to the victim or victims" must exceed $10,000. *Ferreira v. Ashcroft*, 390 F.3d 1091, 1096 (9th Cir. 2004). In our view, §§ 7206(1) and (2) necessarily "involve fraud or deceit" because the provisions require the government to prove either that the defendant "willfully" subscribed to a statement in a tax return he did not believe to be true, or that the defendant "willfully" aided and assisted in the making of a false or fraudulent return. Moreover, because the government is a qualifying victim, *see, e.g.*, *Balogun v. U.S. Attorney Gen.*, 425 F.3d 1356, 1361 (11th Cir. 2005), a tax loss in excess of $10,000 satisfies the second prong of subsection (M)(i). Thus, according to the plain meaning of the statutory language, convictions for violating §§ 7206(1) and (2) in which the tax loss to the government exceeds $10,000 constitute aggravated felonies under subsection (M)(i). *Aguelles-Olivares v. Mukasey*, 526 F.3d 171, 175 (5th Cir. 2008). And because such interpretation does not lead to an absurd or unreasonable result, our inquiry must end.[5]

We recognize that a divided panel of the Third Circuit reached a contrary conclusion in *Ki Se Lee v. Ashcroft*, 368 F.3d 218 (3d Cir. 2004).[6] There, the court found that the presence of subsection (M)(ii) reflected Congress's intent to specify tax evasion as the only removable tax offense, and thereby

---

[5] *United States v. King*, 244 F.3d 736, 740 (9th Cir. 2001) ("Unless the plain meaning leads to an absurd or unreasonable result, which it does not here, our 'judicial inquiry is at an end.'" (citation omitted)); *see also United States v. Gonzales*, 520 U.S. 1, 8 (1997) ("Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one indeed, which would justify a court in departing from the plain meaning of words . . . in search of an intention which the words themselves did not suggest." (internal citation and quotation marks omitted, alteration in original)).

[6] We note that since our decision in *Kawashima I*, the Fifth Circuit has explicitly joined us in rejecting the Third Circuit's approach. *Arguelles-Olivares*, 526 F.3d at 174.

exclude tax offenses from the scope of subsection (M)(i). Writing in dissent, however, then-Judge (now Justice) Alito concluded that the plain text of subsection (M)(i) did not preclude the inclusion of tax offenses within its definition of aggravated felonies. *Id.* at 226 (Alito, J., dissenting). We are persuaded by Judge Alito's interpretation of the statute.

The court in *Ki Se Lee* applied two interpretive canons in support of its reading. First, the court applied the canon that prescribes that, whenever possible, a statute should be interpreted to avoid rendering other provisions superfluous. *Id.* at 223. In the court's view, reading subsection (M)(i) to include tax offenses would render subsection (M)(ii) superfluous because any of the tax evasion offenses described by § 7201 would fall within the scope of subsection (M)(i)'s "fraud or deceit" provision. *Id.* at 222-23. Second, the court applied the familiar canon that the "specific governs the general." *Id.* at 223. Noting that subsection (M)(i) is a general provision that covers "fraud and deceit" and subsection (M)(ii) is a narrower provision that only covers federal tax evasion, the court reasoned that this canon also supported its conclusion that tax evasion in violation of § 7201, as described in subsection (M)(ii), is the only removable tax offense. *Id.* at 224.[7]

While such canons are valuable tools in interpreting a statute's text, it is unnecessary to resort to these devices where, as with subsection (M)(i), the statutory text is clear. *See Ki Se Lee*, 368 F.3d at 226 (Alito J., dissenting); *see also Clark v. Martinez*, 543 U.S. 371, 385 (2005). Subsection (M)(i) plainly categorizes an offense as an aggravated felony as long as it includes two elements, "fraud and deceit" and loss to the victim in excess of $10,000. No further limitations are imposed.

---

[7]The Kawashimas also argue that the canon that construes ambiguities in a deportation statute in favor of the alien supports their argument that subsection (M)(ii) precludes the inclusion of tax offenses in subsection (M)(ii). That canon, however, is inapplicable where, as in this case, the statutory language is clear. *See Cardoza-Fonseca v. INS*, 480 U.S. 421, 449 (1987).

Further, the interpretation adopted by the court in *Ki Se Lee* imputes an intent to Congress that is not supported by the statute's text. As the dissent in *Ki Se Lee* noted, "[i]f Congress had not wanted subsection (M)(i) to apply to 'tax offenses,' Congress surely would have included some language in that provision to signal that intention. As adopted, however, subsection (M)(i) contains no such hint." *Id.*

Finally, there are many reasons why Congress might have included subsection (M)(ii) even though many, if not all, of the tax offenses it describes would fall within the scope of subsection (M)(i). As the dissent in *Ki Se Lee* emphasized, "[s]ubsection (M)(ii) may have been enacted simply to make certain—even at the risk of redundancy—that tax evasion qualifies as an aggravated felony." *Id*. Although we recognize that the avoidance of surplusage in statutory text is an important goal, Congress harbors other important goals as well when adopting legislation. Judge Alito's dissent suggested two examples. First, even if Congress could not think of a tax evasion offense under § 7201 that would not involve "fraud or deceit" and therefore be adequately covered by subsection (M)(i), Congress has often realized its inability to anticipate every possible type of case, and may have added subsection (M)(ii) just to ensure that no tax evasion case fell outside subsection (M)'s definition of an aggravated felony. *Id.* at 226. Alternatively, Congress might have wanted to ensure that no court would hold that tax evasion falls outside the definition of an aggravated felony simply because "fraud" and "deceit" are not specific elements of that offense. *Id.* at 226-27.

**[2]** We therefore respectfully decline to adopt the Third Circuit's interpretation of subsection (M)(i). As noted above, our view is bolstered by the Fifth Circuit's recent decision to reject *Ki Se Lee* in light of our prior holding in *Kawashima I. Arguelles-Olivares*, 526 F.3d at 174. Accordingly, we reaffirm that tax offenses not covered by subsection (M)(ii)'s specific reference to § 7201 qualify as aggravated felonies under subsection (M)(i) where the loss exceeds $10,000.

B

Our next task is to determine whether the Kawashimas' convictions under §§ 7206(1) and (2) are aggravated felonies within subsection (M)(i)'s definition. In answering this question, we have the benefit of the Supreme Court's recent opinion in *Nijhawan v. Holder*, 129 S. Ct. 2294 (2009), which explained the analysis we must follow in answering this question. In *Nijhawan*, the Court considered the applicability of subsection (M)(i) to Manoj Nijhawan, an alien who was convicted for a variety of federal fraud offenses. *Id.* at 2298. None of the statutes under which Nijhawan was convicted required the government to prove the amount of his victims' loss to the jury. At sentencing, however, Nijhawan stipulated that the total loss to his victims exceeded $100 million. *Id.*

**[3]** Based on these convictions, the government sought to remove Nijhawan from the United States, arguing that his conviction for fraud and his stipulation at sentencing combined to demonstrate that his conviction constituted an aggravated felony under subsection (M)(i). The Court agreed with the government. In so doing, it added a new step to the familiar categorical/modified-categorical approaches first announced in *Taylor v. United States*, 495 U.S. 575 (1990). *Nijhawan*, 129 S. Ct. at 2298. Under this approach, we must first decide whether a requirement under a generic crime is an "element" of the generic crime instead of simply a description of the "particular circumstances" in which the offender committed the crime on a specific occasion. *Id.* at 2298. If the requirement is an "element," we apply the *Taylor* approach; if the requirement is "circumstance specific," we ensure that the BIA used "fundamentally fair procedures" to determine whether the offender's crime satisfies the description of the generic offense. *Id.* at 2302-03.

With these principles of analysis established, we consider Akio and Fusako's cases separately.

1

**[4]** The information, plea agreement, and admission in Mr. Kawashima's case establish that he was convicted of violating § 7206(1). That section has four elements: "(1) the defendant made and subscribed a return, statement, or other document that was incorrect as to a material matter; (2) the return, statement, or other document subscribed by the defendant contained a written declaration that it was made under the penalties of perjury; (3) the defendant did not believe the return, statement, or other document to be true and correct as to every material matter; and (4) *the defendant falsely subscribed to the return, statement, or other document willfully, with the specific intent to violate the law*." *United States v. Boulware*, 384 F.3d 794, 810 (9th Cir. 2004) (emphasis added). Thus, Mr. Kawashima's conviction under § 7206(1) necessarily involved "fraud or deceit." *See Ki Se Lee*, 368 F.3d at 226 (Alito, J., dissenting) (" 'Fraud' or 'deceit' is a necessary element of 26 U.S.C. § 7206(1) . . . .").

**[5]** Moreover, the BIA followed fundamentally fair procedures in finding that the offense for which Mr. Kawashima was convicted resulted in a loss to the government of more than $10,000. Specifically, Mr. Kawashima stipulated in the plea agreement that the "total actual tax loss" was $245,126. Given that in *Nijhawan*, the Supreme Court relied on such a stipulation to conclude that a petitioner's prior crime was an "aggravated felony" under subsection (M)(i), we cannot conclude that the BIA's reliance on such a stipulation in this case was improper.

Based on the evidence available to us in the administrative record, we conclude that clear and convincing evidence supports the BIA's determination that Mr. Kawashima's conviction under § 7206(1) constitutes an aggravated felony as described in subsection (M)(i) because it involved "fraud or deceit" and because his offense resulted in a loss to the government in excess of $10,000. Accordingly, we deny Mr.

Kawashima's petition for review of the BIA's affirmance of the IJ's order.

2

**[6]** The record of conviction in Mrs. Kawashima's case establishes that she was convicted of aiding and assisting in the preparation of a false tax return, in violation of § 7206(2).[8] That section requires the government to prove the following: "(1) the defendant aided, assisted, or otherwise caused the preparation and presentation of a return; (2) that *the return was fraudulent or false as to a material matter*; and (3) *the act of the defendant was willful.*" *United States v. Salerno,* 902 F.2d 1429, 1432 (9th Cir. 1990) (emphasis added). Moreover, as we observed in *Salerno*, "[t]he Supreme Court has repeatedly held that in order to make out a 'willful violation' of section 7206(2) the government must prove defendants acted with specific intent to defraud the government in the enforcement of its tax laws." *Id.* Thus, a conviction under § 7206(2) necessarily "involves fraud or deceit" and therefore satisfies the first element of an aggravated felony as described in subsection (M)(i).

As to the second element, in *Kawashima I* we concluded that the record of conviction did not contain sufficient evidence to establish that Mrs. Kawashima's offense resulted in a loss to the government in excess of $10,000. 503 F.3d at

---

[8]In their supplemental brief to this court, petitioners assert that Mrs. Kawashima's case is no longer before us because after our first opinion in this case granted Mrs. Kawashima's petition for review, the government did not file a petition for rehearing. We are unpersuaded by this argument. Although it is true that the government did not ask us to reconsider our resolution of Mrs. Kawashima's case, we are entitled to do so as we have not yet issued our mandate in this case. As such, our decision remains subject to modification, either at the request of a party or *sua sponte. See Finberg v. Sullivan*, 658 F.2d 93, 96 n.5 (3d Cir. 1980) (en banc). Thus, Mrs. Kawashima's case remains before us, and we are obligated to decide the merits of her petitions for review in light of *Nijhawan*.

1003-04. That conclusion was predicated on our assumption that our analysis should proceed under *Taylor*'s modified categorical approach, and therefore the scope of our review was limited to the types of documents described in *Shepard v. United States*, 544 U.S. 13, 20 (2005), and its progeny.

**[7]** That assumption, it turns out, was wrong. In *Nijhawan*, the petitioner argued that an immigration court deciding whether an aggravated felony meets subsection (M)(i)'s $10,000 threshold should look only to the "charging documents, jury instructions, and any special jury finding (if one has been requested). If there was a guilty plea (and no trial) the subsequent court should examine the written plea documents or the plea colloquy." 129 S. Ct. at 2302. The Court rejected this argument, stating that

> nothing in prior law that so limits the immigration court . . . . [T]he cases that developed the evidentiary list to which [Nijhawan] points[ ] developed that list for a very different purpose, namely that of determining which statutory phrase (contained within a statutory provision that covers several different generic crimes) covered a prior conviction. For another, [Nijhawan's] proposal itself can prove impractical insofar as it requires obtaining from a jury a special verdict on a fact that . . . is not an element of the offense.
>
> Further, a deportation proceeding is a civil proceeding in which the Government does not have to prove its claim "beyond a reasonable doubt."

*Id.* at 2303. Thus, the BIA is not limited to only those documents which a court applying the modified categorical approach may review.

Given this, the government argues that we should remand this case to the BIA so that the agency may determine, in the

first instance, what additional types of evidence it may consider under this newly announced standard and so that the government may have the opportunity to introduce evidence to meet this standard. We agree. In *I.N.S. v. Ventura*, the Supreme Court summarily reversed a Ninth Circuit decision refusing to remand a case to the BIA so that it could determine whether changed country conditions rendered an alien ineligible for asylum. 537 U.S. 13, 15 (2002) (per curiam). The Court held that the Ninth Circuit had erred in deciding the "changed circumstances" matter on its own, observing that "[g]enerally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *Id.* at 15-17. Remand is required so that "[t]he agency can bring its expertise to bear on the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides." *Id.* at 17; *see also Gonzales v. Thomas*, 547 U.S. 184 (2006) (per curiam).

Since *Ventura*, we have distinguished between circumstances in which remand is necessary to permit the BIA to apply its expertise in reconsidering evidence and circumstances in which remand is unnecessary because the BIA exercised its expertise before the case came before us. Thus, in *Fernandez-Ruiz v. Gonzales*, we refused to remand a case to the BIA so that it could determine whether the evidence present on an alien's record of conviction established that the conviction was a "crime of domestic violence" rendering him removable. 466 F.3d 1121, 1134-35 (9th Cir. 2006) (en banc). We distinguished *Ventura*, noting that it "undeniably involved an issue the BIA had not considered." *Id.* at 1133. By contrast, in *Fernandez-Ruiz*, the BIA *had* considered whether the petitioner's state conviction constituted a crime of domestic violence—it had simply conducted this inquiry under the categorical, rather than modified categorical, approach. *Id.* at 1134-35. We did not consider remanding the case for the gov-

ernment to supplement the record of the petitioner's conviction because the government did not ask that we do so. *Id.* at 1135.

**[8]** This case, however, is ripe for remand. Our remand does not ask the BIA to consider whether evidence currently on the record is sufficient to demonstrate that Mrs. Kawashima's conviction is an "aggravated felony." *Cf. Ruiz-Vidal v. Gonzales*, 473 F.3d 1072, 1080 (9th Cir. 2007) (holding that we need not remand to the BIA so that it may apply the categorical approach). Instead, we remand to the BIA so that it may determine, in light of the Supreme Court's holding in *Nijhawan*, what types of evidence it may consider to determine the total loss suffered by the government as a result of Mrs. Kawashima's crime.

## III

Our final task is to determine whether the BIA erred in denying the Kawashimas' motion to reopen.[9]

---

[9]The government contends that we lack jurisdiction over the Kawashimas' petition for review of the BIA's decision, citing 8 U.S.C. § 1252(a)(2)(c). That provision strips a court of jurisdiction to review "any final order of removal against an alien who is removable by reason of having committed" certain offenses, including an "aggravated offense." *See* 8 U.S.C. § 1252(a)(2)(c); *see also id.* § 1227(a)(2)(A)(iii). However, the government's argument ignores § 1252(a)(2)(D), which provides that, despite subsection (c), a court remains vested with the jurisdiction to review "constitutional claims or questions of law raised upon a petition for review."

As a threshold matter, the Kawashimas argue that the BIA applied the incorrect regulation when it determined that their motion was untimely. Whether the BIA applied the appropriate regulation is decidedly a "question of law" over which we retain jurisdiction. *See Florez-de Solis v. INS*, 796 F.2d 330, 333 (9th Cir. 1986) ("[Petitioner's] contention that the BIA applied an incorrect standard is a question of law reviewed *de novo*.").

A

**[9]** Mr. Kawashima argues that his motion to the BIA was a special motion pursuant to 8 C.F.R. § 1003.44 to seek § 212(c) relief. Section 1003.44 "applies to certain aliens who formerly were lawful permanent residents, who are subject to an administratively final order of deportation or removal, and who are eligible to apply for relief under former section 212(c) of the Act and 8 CFR § 1212.3 with respect to convictions obtained by plea agreements reached prior to a verdict at trial prior to April 1, 1997." 8 C.F.R. § 1003.44(a). To obtain relief under this provision, an alien "must file a special motion to seek section 212(c) relief on or before April 26, 2005." *Id.* § 1003.44(h). Furthermore, the provision imposes strict procedural requirements. In particular, the alien's motion "*must* contain the notation '*special motion to seek section 212(c) relief.*' " *Id.* § 1003.44(f) (emphasis added).

Mr. Kawashima claims that the required notation appears on page nine of the Kawashimas' motion. However, this page fails to contain any of the necessary text. Instead, it simply quotes 8 C.F.R. § 1003.44(b), which states, among other things: "Generally, a special motion under this section to seek section 212(c) relief must establish that the alien . . . ." This language fails in all respects to comply with the strict requirements imposed by 8 C.F.R. § 1003.44(h) and was inadequate to place the BIA and the district counsel on notice that Mr. Kawashima intended to make a special motion to seek § 212(c) relief.

**[10]** Standing alone, Mr. Kawashima's failure to include the precise language required by § 1003.44(h) is a sufficient basis on which to reject his attempt to construe the Kawashimas' motion as one seeking § 212(c) relief. Even if it were not, however, the cover page and first page of the motion state no less than four times: "Motion to Reopen Proceedings and Stay Deportation Under *Magana-Pizano v. INS.*"[10] A motion

---

[10]The motion contained no citation to *Magana-Pizano*, but Mr. Kawashima might have been referring to our opinion in *Magana-Pizano*

styled in this manner cannot reasonably be spared by text hidden in a lengthy quote found on page nine of the brief.

**[11]** Section 1003.44 does not require mere notice, it imposes strict procedural requirements to qualify for relief, including the notation "special motion to seek section 212(c) relief." Accordingly, we conclude that the BIA did not err in applying the 90-day filing deadlines for general motions to reopen pursuant to 8 C.F.R. § 1003.2(c)(2) and in denying Mr. Kawashima's motion to reopen as untimely because it was filed almost eight months late.[11] Therefore, we deny Mr. Kawashima's petition for review of the BIA's denial of the motion to reopen.

### B

Since we have granted Mrs. Kawashima's petition for review, we dismiss her petition for review of the BIA's denial of her motion to reopen as moot. *See Goldeshtein v. INS*, 8 F.3d 645, 646 n.1, 650 (9th Cir. 1993) (dismissing as moot petitioner's motion to reopen after concluding that the petitioner is not removable because he was not convicted of a predicate offense involving moral turpitude).

---

*v. INS*, 200 F.3d 603 (9th Cir. 1999). Although that opinion did discuss § 212(c) and the Antiterrorism and Effective Death Penalty Act in that opinion, it did not concern a motion to reopen. In any event, the motion's reference to *Magana-Pizano* does not comply with the requirements imposed by 8 C.F.R. § 1003.44(f).

[11]Pursuant to 8 C.F.R. § 1003.2(c)(2), a general motion to reopen "must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened, or on or before September 30, 1996, whichever is later." The BIA's final adminsitrative decision upholding the IJ's order of removal was rendered on August 16, 2004. The Kawashimas filed their motion to reopen on April 26, 2005 (or April 27, 2005), more than eight months after the BIA's final decision.

IV

For the foregoing reasons, the petition for review of the BIA's affirmance of the IJ's removal order is **DENIED** with respect to Akio Kawashima (04-74313) and **GRANTED and REMANDED** with respect to Fusako Kawashima (05-74408). The petition to review the BIA's denial of the motion to reopen is **DENIED** with respect to Akio Kawashima (04-74313) and **DISMISSED as MOOT** with respect to Fusako Kawashima (05-74408).