**Young Hak SONG, Plaintiff,**

v.

**IMMIGRATION and NATURALIZATION SERVICE (INS); Mira Loma Detention Center of INS; Thomas Schiltgen, District Director of the INS; Doris Meissenger, Commissioner of the INS; Janet Reno, Attorney General of the United States; Leonard Kovensky, Assistant District Director of Deportation and Detention of the INS; and Deportation Officer Majorga, Defendants.**

No. CV 00–00989–GAF (EE).

United States District Court,
C.D. California.

Feb. 10, 2000.

1122

Nancy E. Miller, Robert L. Reeves & Assoc., Pasadena, CA, Sung U. Park, Los Angeles, CA, for plaintiffs.

Katherine Hikida, AUSA, Alejandro Mayorkas, U.S. Atty., Los Angeles, CA, for defendants.

## ORDER ISSUING STAY OF DEPORTATION

FEESS, District Judge.

## I. INTRODUCTION

This motion for a stay of deportation arises in connection with Young Hak Song's petition for a writ of habeas corpus. His petition challenges the conclusion by the Immigration and Naturalization Service ("INS") that he cannot be considered for discretionary relief from deportation because he was convicted of an "aggravated felony." Petitioner challenges this decision on two grounds. First, Petitioner contends that the identification of his 1996 conviction as an "aggravated felony" is impermissibly retroactive because it was not an "aggravated felony" at the time of conviction. Second, Petitioner contends that the denial of consideration for Immigration and Naturalization Act ("INA") § 212(h) relief violates equal protection even if he was convicted of an "aggravated felony," because illegal immigrants convicted of aggravated felonies are eligible for consideration while legal immigrants convicted of the same crimes are not. Petitioner moves for a stay of deportation while this Court considers these challenges to the INS's conclusions.

In opposition, the government first contends that Petitioner's sole avenue for judicial review of the deportation order is in the court of appeals. As such, the government contends that this Court is without jurisdiction to consider Petitioner's application for a writ of habeas. The government next contends that the application of the definition of "aggravated felony" is not impermissibly retroactive because Congress explicitly provided that the application of the definition should be retroactive. Finally, the government contends that there is no equal protection violation in considering illegal but not legal aliens for discretionary relief; the government contends that it is rational to punish those who have violated the trust imparted by the grant of legal residence.

The Court agrees that the normal avenue for judicial review of a deportation order consists of an appeal to the court of appeals. However, the Court notes that, in this case, Petitioner was convicted of a 1998 firearms offense and therefore cannot appeal to the court of appeals even to challenge the application of the "aggravated felony" definition to his 1996 conviction. Because no other avenue for judicial review exists, Ninth Circuit precedent provides that Petitioner may bring his challenge to the final order of deportation via a habeas petition in this Court.

Turning to the merits, the Court notes that Petitioner did not raise any challenge to the retroactive application of the definition of "aggravated felony" before the Immigration Judge or the Board of Immigra-

tion Appeals ("BIA"). It would therefore appear that Petitioner waived that argument by failing to exhaust it. Even if he had not waived it, however, it is clear that Petitioner did not rely upon the availability of discretionary relief when he pled guilty to his original offenses in 1996. As such, the application of the definition of "aggravated felony" in his case is not unconstitutionally retroactive. Petitioner has not demonstrated a clear entitlement to relief on this ground.

However, on an issue of first impression,[1] the Court does find merit in Petitioner's equal protection challenge to INA § 212(h) relief. In 1996, Congress amended the Immigration and Naturalization Act with the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). Pursuant to the IIRIRA, a legal immigrant convicted of an "aggravated felony" cannot be considered for discretionary relief under INA § 212(h). At the same time, however, an *illegal* immigrant convicted of an "aggravated felony" *may* be considered for discretionary relief.

Because no suspect class is involved, the Court reviews this distinction on a rational basis standard. Particularly in light of Congress's broad discretion in the area of immigration, the Court would uphold the distinction if the Court could conceive of *any* rational basis for the distinction. Nevertheless, the Court has reviewed the government's proposed justification and considered the issue on its own, and it finds that there is no rational basis for

conferring a benefit on an illegal alien that is denied to legal resident aliens. Accordingly, the Court finds that the INS has clearly violated the Constitution in reaching a final order to deport Petitioner, and the Court will stay the deportation.

## II.  FACTUAL BACKGROUND

### A. Petitioner Young Hak Song Enters This County in 1981

Petitioner was born on February 10, 1974 in Korea. Petitioner entered this country on June 10, 1981 as an immigrant.

### B. Petitioner Is Convicted of Forgery and Possession of Stolen Property

On March 4, 1996, Petitioner was charged in Orange County with forgery and possession of stolen property. On June 7, 1996, Petitioner pled guilty to those charges. Although Petitioner alleges that he was not informed of any possible immigration consequences until after he pled guilty, Petitioner initialed and signed a form that said "I understand that if I am not a citizen of the United States the conviction for the offense charged may have the consequence of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."[2] Petitioner alleges that, *after* his guilty plea, he asked his public defender if he was in danger of deportation, and the public defender replied "Nah, don't worry about it."[3]

---

1. The only published case to consider the equal protection issue is *Hypolite v. Blackman*, 57 F.Supp.2d 128 (M.D.Pa.1999). However, the alien in that case had been convicted of certain drug charges which bar § 212(h) relief for *both* legal and illegal immigrants. Since similarly-situated individuals were treated the same, there was no equal protection issue in that case.

    The issue has been noted in at least two other published cases, but neither case has considered the issue. *Catney v. INS*, 178 F.3d 190, 194 (3rd Cir.1999) (Becker, C.J.) (directing that issue must be raised on habeas rather than via direct appeal) and *Maria v. McElroy*, 68 F.Supp.2d 206, 235 (E.D.N.Y.1999) (de-

clining to reach equal protection claim because other claims presented better avenue for petitioner).

2. The form was also signed by Petitioner's attorney, who affirmed that she had explained to him each of the rights above in the form.

3. Petitioner filed for a Writ of Coram Nobis challenging the conviction, alleging ineffective assistance of counsel because his deputy public defenders failed to inform him of the immigration consequences of a guilty plea. This Writ was denied on July 26, 1999 on the grounds that a writ of Coram Nobis is not an appropriate vehicle for raising an ineffective assistance of counsel claim.

At the time Petitioner pled guilty, Petitioner's crimes would not have constituted an "aggravated felony" unless punished with more than five years imprisonment.

Petitioner was given a suspended sentence of three years imprisonment. Among the conditions of that suspension was that Petitioner spend 365 days in the county jail.

## C. Petitioner Is Charged With Possessing a Firearm in 1998 and His Probation Is Revoked

On December 18, 1997, Petitioner was apparently caught in Los Angeles County in possession of a firearm. This possession constituted both a violation of the terms of his probation on the previous conviction and an independent crime, since Petitioner was a felon in possession of a firearm.

On January 20, 1998, Petitioner was charged in Los Angeles County with being a felon in possession of a firearm. It appears to the Court that Plaintiff pled guilty to this second offense on March 11, 1998 and was sentenced to 16 months confinement. There is no evidence in the record that would reveal whether or not Petitioner was provided any warning of any immigration consequence before this guilty plea.[4] The abstract of judgement indicates that the 16 month confinement was to run concurrently with any confinement in the Orange County case.

On May 1, 1998, the court in Orange County found Petitioner in violation of his probation for having possessed a firearm while on probation. Petitioner was sentenced to 16 months as a result of the probation violation.[5]

## D. Petitioner Is Taken Into INS Custody and the INS Begins Deportation Proceedings

1. *Petitioner Is Served with a Notice to Appear For Being Convicted of a Firearms Violation and Admits the Firearms Violation*

Following his release from state custody in approximately November, 1998, Petitioner was taken into INS custody. Petitioner was served with a Notice to Appear ("NTA") by the INS and charged with being in violation of INA § 237(a)(2)(C), which provides for the deportation of an alien who is convicted of possessing a firearm in violation of any law. 8 U.S.C. § 1227(a)(2)(C).

On November 24, 1998, Petitioner admitted the allegations on the Notice to Appear. Such admissions made him eligible for deportation.

2. *Petitioner Is Denied Consideration for Relief Under INA § 240A or INA § 212(h)*

As an alien eligible for deportation, Petitioner sought to be considered for discretionary relief from deportation pursuant to

---

**4.** Petitioner affirms that "[e]ven at my parole [sic] violation hearing where I violated probation by being convicted of possession of a firearm, I was not informed either by my private attorney nor by the court that I could be deported for my underlying convictions." However, Petitioner does not mention whether there was any discussion of immigration consequences before Petitioner pled guilty to the felon in possession charge.

**5.** On November 1, 1999, Petitioner filed a Petition for a Writ of Habeas Corpus with the California State Court of Appeal. The Petition is more than a little confusing, since it challenges ineffective assistance of counsel leading to the Petitioner's "June 7, 1998"

conviction for forgery and receipt of stolen property. The record, of course, does not disclose any such conviction, although it does disclose a June 7, 1996 conviction and a May 1, 1998 revocation of probation from the 1996 conviction.

The substance of Petitioner's state habeas claim is the same as his previous petition for a Writ of Coram Nobis: he alleges that he was never informed of potential immigration ramifications prior to his guilty pleas and would not have pled guilty had he been aware of such ramifications.

There is no indication that the California Court of Appeals has ruled on Petitioner's State habeas claim.

INA § 240A and INA § 212(h). The first provision provides that the Attorney General may, in her discretion, allow relief from deportation for long-term residents of the United States. 8 U.S.C. § 1229b(a). The second provides that the Attorney General may, in her discretion, allow relief from deportation if such deportation would cause extreme hardship to residents remaining in the United States. 8 U.S.C. § 1182(h)(1)(B). However, neither provision is available to those convicted of an "aggravated felony." 8 U.S.C. §§ 1182(h)(2) and 1229b(a).

As defined after the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, a crime of theft or a crime of forgery will constitute an aggravated felony if punished by a sentence of more than a year in custody. *See* INA § 101(a)(43)(G) (theft); INA § 101(a)(43)(R) (forgery). The INS contended that Petitioner's 1996 conviction constituted conviction of an "aggravated felony" because Petitioner was sentenced to more than a year in custody for the crimes of theft and forgery. As a result, notwithstanding the fact that Petitioner would have been eligible for consideration for discretionary relief if convicted solely of the 1998 firearms charge, the INS contended that Petitioner was not eligible for consideration because of the previous 1996 conviction.

In the proceedings before the Immigration Judge, Petitioner did *not* challenge the constitutionality of applying the IIRIRA definition of "aggravated felony" to his 1996 conviction rather than the pre-IIRIRA definition of "aggravated felony" that existed at the time of his guilty plea and conviction. Petitioner *did* challenge the constitutionality of denying legal aliens the opportunity for § 212(h) relief while permitting *illegal* aliens to apply for § 212(h) relief.

On June 21, 1999, the Immigration Judge concluded that Petitioner was not eligible for relief under § 240A or § 212(h) because Petitioner's 1996 conviction constituted conviction of an "aggravated felony." The Immigration Judge also noted that he had "no jurisdiction" to "entertain much less render a decision based on a constitutional challenge."

### 3. Petitioner's Administrative Appeal Is Denied on December 27, 1999 and His Deportation Order Becomes Final

Petitioner administratively appealed the order of the Immigration Judge to the Board of Immigration Appeals ("BIA"), arguing that the refusal to consider him for § 212(h) relief constituted a violation of equal protection.[6] Again, Petitioner made no argument that the application of the new definition of "aggravated felony" was impermissibly retroactive in his case.

The INS responded that the BIA was "without authority to declare their governing statutes unconstitutional." INS Br. at 2 (citing *Matter of L–S–J–*, Int. Dec. 3322 (BIA 1997)).

On December 27, 1999, the BIA denied plaintiff's appeal to the June 21, 1999 Order. The BIA did not address the constitutional challenge, but simply noted that the statute clearly prohibited legal aliens from being considered under § 212(h).

### E. Petitioner Files a Writ of Habeas Corpus and Seeks a TRO

On January 28, 2000, Petitioner filed a writ of habeas corpus in this Court. Contemporaneously with that filing, Petitioner sought an emergency stay of deportation. Petitioner reiterated his argument that he should have been considered for relief under § 212(h) and that the denial of such consideration violated equal protection. Petitioner also argued for the first time

6. Petitioner also sought relief because he contended that the "aggravated felony" conviction would be vacated before the appeal was heard. However, it appears that the conviction had not been vacated by the time the appeal was heard, and the BIA noted that pending collateral attacks on a judgment are not considered by the BIA.

that the use of the new definition of "aggravated felony" was impermissibly retroactive in his case.

The government did not oppose a ten day stay of deportation to allow the government to investigate and brief the issue. As a result, the Court issued a temporary restraining order staying deportation until a hearing on this motion for a preliminary injunction.

## III. LEGAL ANALYSIS

### A. This Court Has Jurisdiction to Consider a Petition of Habeas Corpus Notwithstanding the IIRI-RA

In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). The IIRIRA effected significant changes in the review process for deportations.

1. *Normally, Exclusive Review of a Deportation Is Vested in the Court of Appeals Pursuant to 8 U.S.C. § 1252(a)(1)*

Section 242 of the Immigration and Naturalization Act now provides the standards for review of a final order of deportation. Section 242(a)(1) of the INA states that "[j]udicial review of a final order of removal ... is governed only by chapter 158 of Title 28, except as provided by" the limitations in INA § 242(b). 8 U.S.C. § 1252(a)(1). The reference to chapter 158 of Title 28 refers to the Hobbs Act, which provides for judicial review of administrative agency decisions in the court of appeals. *See* 28 U.S.C. §§ 2341–2351. In other words, judicial review of a deportation order is normally vested in the court of appeals.

---

**7.** In this respect, § 242(b)(9) is similar § 242(g), which provides for exclusive jurisdiction on deportation reviews pursuant to INA § 242:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the

a. *INA Section 242(b) Defines the Contours of Review by the Court of Appeals*

Subsection (b) is the core of INA § 242 and defines the contours of the judicial review conferred by § 242(a)(1). INA §§ 242(b)(1) and (b)(2) require the alien to file his or her petition for review with the court of appeals within 30 days of the final order of removal. 8 U.S.C. § 1252(b)(1)–(2).

Subsection (b)(4) specifies the scope and standard of review in the court of appeals. It requires the court of appeals to limit its review to the administrative record in most instances and to afford considerable deference to the agency's factual determinations.

b. *Section 242(b)(9) Provides For Exclusive Review of Constitutional Questions Arising from Deportation Orders to the Court of Appeals*

Subsection (b)(9) provides that "judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section."[7] The Supreme Court in *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 119 S.Ct. 936, 943, 142 L.Ed.2d 940 (1999) ("Arab–American") referred to this section as the "unmistakable zipper clause" because judicial review is "zipped up" and confined within INA § 242.

> Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

However, as discussed *infra*, § 242(g) has been authoritatively interpreted by the Supreme Court. Although the Supreme Court has touched upon § 242(b)(9), it has not given any such authoritative interpretation to § 242(b)(9).

2. *However, No Review Is Available Under INS Section § 242 When The Alien Is Being Deported As a Result of an "Aggravated Felony" or a Firearms Offense*

Pursuant to INA § 242(a)(2)(C), and "notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of deportation against an alien who is removable by reason of having committed a criminal offense covered in ... section 1227(a)(2)(A)(iii), (B), (C), or (D) of this title." 8 U.S.C. § 1252(a)(2)(C). Section 1227(a)(2)(A)(iii) refers to any alien who has committed an "aggravated felony" as defined in INA § 101(a)(43). Section 1227(a)(2)(C) refers to any alien who is convicted of possessing a firearm in violation of any law.

3. *Because Petitioner Was Convicted of a Firearms Offense, No Review is Available under INA § 242*

■ The government argues that because Petitioner is now challenging the retroactive application of the definition of "aggravated felony," Petitioner could have appealed to the Ninth Circuit on those grounds. The government then argues that, having reached the Ninth Circuit, the Ninth Circuit would constitute Petitioner's sole opportunity for review and that the Ninth Circuit would have had sole authority to review all constitutional questions pursuant to § 242(b)(9).

■ An alien who could otherwise appeal to the court of appeals but for an "aggravated felony" conviction will not be precluded from appealing if he challenges the conclusion that he was properly convicted of an aggravated felony. *Yang v. INS*, 109 F.3d 1185, 1192 (7th Cir.1997). However, in this case, there are ample grounds to be skeptical that Petitioner could have appealed to the Ninth Circuit on the basis of the definition of "aggravated felony" because Petitioner did not raise that issue in the administrative process. *See* 8 U.S.C. § 1252(d)(1) (requiring alien

to exhaust administrative remedies before appealing to court of appeals).

Even more importantly, Petitioner could not have appealed to the Ninth Circuit under any circumstance because he conceded that he was rendered deportable by reason of a firearms conviction pursuant to 8 U.S.C. § 1227(a)(2)(C). Section 242(a)(2)(C) makes it clear that no alien convicted of a firearms conviction may seek judicial review, and it is equally clear that the complete preclusion of judicial review on one ground moots the possibility of judicial review on another. *Yang*, 109 F.3d at 1191 (noting that colorable defense on one ground irrelevant when no review was available on another). As a result, there was never any possibility that Petitioner could have appealed to the Ninth Circuit.

4. *Where No Judicial Review Is Otherwise Available, the Ninth Circuit's Recent Decision in Magana–Pizano Compels the Conclusion that Habeas Is Still Available*

On December 27, 1999, the Ninth Circuit handed down its decision in *Magana–Pizano v. INS*, 200 F.3d 603 (9th Cir.1999) ("*Magana II*").

The history of *Magana II* is important in understanding its holding. The petitioner in that case entered the United States in 1977 as a child of 5. In February 1995, he pleaded nolo contendre to the charge of being under the influence of cocaine and methamphetamine. He agreed that he was subject to deportation but sought discretionary relief from deportation under INA § 212(c).[8] However, the INS refused to consider him for discretionary relief because Congress had precluded discretionary relief for most drug offenses in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

Petitioner filed both a direct appeal to the Ninth Circuit and a habeas action in

---

8. Section 212(c) has been replaced by § 240A. Both sections allow discretionary relief to long-term residents of the United States.

the district court. The Ninth Circuit *sua sponte* consolidated both matters.

In its first decision on the case, *Magana–Pizano v. INS*, 152 F.3d 1213 (9th Cir.), *as amended* 159 F.3d 1217 (9th Cir. 1998) ("*Magana I*"), the Ninth Circuit addressed first the direct appeal and found that, under the IIRIRA, it had no authority to consider the direct appeal. *Magana I*, 152 F.3d at 1216. Turning to the habeas petition, the Ninth Circuit found that the habeas petition would have been precluded by INA § 242(g), but that § 242(g) was unconstitutional. *Magana I*, 152 F.3d at 1216–22.

Subsequent to *Magana I*, the Supreme Court decided *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 119 S.Ct. 936, 943, 142 L.Ed.2d 940 (1999). In *Arab–American*, the Supreme Court narrowly construed § 242(g) and indicated that it only prohibited review of the specifically enumerated actions, *i.e.* "the decision or action by the Attorney General to *commence proceedings, adjudicate cases,* or *execute removal orders.*" 119 S.Ct. at 943 (emphasis added). Unless the petitioner challenges the decision to commence the proceeding, to adjudicate it, or to execute the removal order, § 242(g) does not apply. *Id.; see also Garcia–Guzman v. Reno*, 65 F.Supp.2d 1077, 1082–83 (N.D.Cal.1999) (explaining that under *Arab–American* and its progeny, " 'adjudicate'· does not, perforce, reach all decisions and actions in the process of adjudicating the case").

The Supreme Court then vacated the Ninth Circuit's decision in *Magana I* and remanded for consideration in light of the decision in *Arab–American*. *INS v. Magana–Pizano*, 526 U.S. 1001, 119 S.Ct. 1137, 143 L.Ed.2d 206 (1999).

In *Magana II*, the Ninth Circuit concluded that § 242(g) was no longer implicated by the petitioner's habeas claim. Noting that the courts should generally not presume that a statute denies habeas relief unless the statute explicitly says so,[9] the Ninth Circuit found that § 242(g) had *not* precluded the petitioner's habeas claim. *Magana II*, 200 F.3d at 608–10 (citing *Felker v. Turpin*, 651, 660, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996)). The Ninth Circuit thus reaffirmed its holding from *Magana I* that the district court retains jurisdiction under 28 U.S.C. § 2241 when the petitioner has no other judicial remedy. 200 F.3d 603, 607–08. The Ninth Circuit added that "the scope of habeas review extends to both constitutional and statutory constructions." *Id.* at 609–10.

This Court is obliged to follow *Magana II* and the clear holding of *Magana II* that habeas relief is available when no other judicial review is available. *See also Catney v. INS*, 178 F.3d 190, 195 (3d Cir.1999) (holding that Third Circuit did not have jurisdiction to consider equal protection appeal by aggravated felon and directing that claim should be brought via habeas). As no other judicial review is available to Petitioner, this Court retains jurisdiction to hear a habeas claim.[10]

---

9. The Court does note, however, that before the IIRIRA, aliens subject to deportation filed habeas petitions under an explicit statutory provision, INA § 106(a). The IIRIRA repealed INA § 106(a), and Magana–Pizano filed his habeas pursuant to the general habeas statute, 28 U.S.C. § 2241.

10. The government places heavy reliance on *Maldonado v. Fasano*, 67 F.Supp.2d 1170, 1175–78 (S.D.Cal.1999), which held that a petitioner like this Petitioner cannot seek review outside of the court to appeals because the zipper clause in § 242(b)(9) governs. However, the *Maldonado* decision was decid-

ed before *Magana II* and therefore does not reflect the Ninth Circuit's holding that habeas review will be available when no other review is available.

The government also relies on *Richardson v. Reno*, 180 F.3d 1311 (11th Cir.1999) in which the 11th Circuit concluded that habeas was no longer available after the IIRIRA regardless of the unavailability of other relief. However, although there is a circuit split on this issue, the majority of the circuits (including the Ninth Circuit) have concluded that habeas is still available. This Court is in the Ninth Circuit and must follow the holding of the Ninth Circuit on this issue.

## B. The Standard for Injunctive Relief

### 1. *In the IIRIRA, Congress Instituted a New Standard for Injunctive Relief in Deportation Cases*

As part of the IIRIRA, Congress included a new standard for the issuance of injunctive relief. INA § 242(f)(2) now provides that "[n]otwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law." 8 U.S.C. § 1252(f)(2).

### 2. *The IIRIRA Standard Applies in This Case*

■ By its terms, the IIRIRA standard clearly applies because Petitioner seeks a stay of deportation. Moreover, it is well established that habeas corpus petitions are subject to the "jurisdictional and statutory limitations on petitions for writs of habeas corpus." *Ozoanya v. Reno*, 968 F.Supp. 1, 8 (D.D.C.1997) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 478, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) and *Chatman–Bey v. Thornburgh*, 864 F.2d 804, 809 (D.C.Cir.1988)). In other words, it is clear that at the very least Congress may impose reasonable standards on the exercise of the Court's habeas jurisdiction.

The Court's conclusion that § 242(f)(2) applies here is confirmed by the only published case in the country to previously consider the question. *Hypolite v. Blackman*, 57 F.Supp.2d 128, 132 (M.D.Pa.1999) (applying standard in § 242(f)(2) to habeas in deportation case).

11. The government argues in this case that *Magana II* standards do not apply because *Magana II* dealt with the retroactive effect of AEDPA rather than the retroactive effect of the IIRIRA. The government observes that, unlike AEDPA, the IIRIRA explicitly provides for retroactive application. The government argues that under *Landgraf v. USI Film Prod-*

## C. Petitioner May Not Challenge the "Retroactive" Application of the Definition of Aggravated Felony as Unconstitutional

### 1. *Petitioner Has Waived This Argument By Not Presenting It to the Immigration Judge or the BIA*

■ Petitioner brings this suit under the general habeas statute, 28 U.S.C. § 2241. As a general rule, "a federal prisoner is required to exhaust his federal administrative remedies before filing a habeas petition." *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir.1991). Although this requirement is not jurisdictional, *id.*, it does forbid a reviewing court from granting relief on claims that were not raised during the administrative process. *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir.1986).

■ Although Petitioner had all of the facts in his possession necessary to formulate the retroactivity challenge to the application of the IIRIRA definition of "aggravated felony," Petitioner failed to raise this issue before either the Immigration Judge or the BIA. Petitioner has therefore waived the issue by failing to raise it at the appropriate time.

### 2. *Even if Petitioner Had Raised the Issue, Petitioner Would Not Qualify for Relief Under the Standards Enunciated in Magana II*

■ As an alternative ground for denying Petitioner's claim, the Court concludes that Petitioner would also fail on the merits to establish an unconstitutionally retroactive application of the new definition of "aggravated felony."

The Ninth Circuit's recent decision in *Magana II* contains a dispositive discussion on when the change in standards for discretionary relief based on prior convictions will be considered impermissibly retroactive. *Magana II*, 200 F.3d at 611–13.[11]

*ucts*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Court should cease any inquiry if the statute is explicitly retroactive.

The government badly misunderstands *Landgraf*. *Landgraf* stands only for the unexceptional proposition that, if the language is clear, the Court need not look beyond that

■ As a general rule, "denying eligibility for discretionary relief on the basis of past criminal convictions does not constitute an impermissible retroactive application of the statute." *Magana II*, 200 F.3d at 612–13 (citing *Samaniego–Meraz v. INS*, 53 F.3d 254, 256 (9th Cir.1995)). As the Court understands the law, discretionary relief is not a right and Congress therefore does not deprive anyone of vested rights when it changes the standard for those it will consider for discretionary relief. This is true even when the new standards are based on prior conduct.

However, the Ninth Circuit observed that the decision to enter a plea of guilty or nolo contendre may be influenced by immigration consequences of a conviction. *Magana II*, 200 F.3d at 612–13. As such, an alien's choice to plead guilty or nolo may be taken in explicit reliance on the then-existing definition of "aggravated felony." *Id.* As a result, the Ninth Circuit concluded that a petitioner may be able to establish that a change is impermissibly retroactive as to him if he can make "a specific factual showing that a plea was entered in reliance on the availability of discretionary waiver under § 212(c)." *Id.*

Petitioner does not make such a showing. In fact, Petitioner's declaration indicates that he never considered possible immigration consequences at all when pleading guilty. It is clear that Petitioner did not make his plea in the expectation that discretionary relief would be available to him. As he did not explicitly rely upon the availability of discretionary relief, he cannot make the showing that the Ninth Circuit has required to establish an unconstitutional retroactive change in standards.

**D. Section 212(h) Does Violate Equal Protection in Allowing Consideration for Discretionary Relief for Illegal Aliens Convicted of "Aggravated Felonies" But Denying Consideration for Discretionary Relief for Legal Aliens Convicted of the Same Offenses**

■ INA § 212(h) allows the Attorney General the discretion to grant relief from deportation in the event that an alien shows that his or her deportation would cause "extreme hardship" to a spouse, parent or child who permanently resides in this country. 8 U.S.C. § 1182(h)(1)(B).

However, INA § 212(h) also precludes consideration for this relief "in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if" the alien has been convicted of an "aggravated felony." 8 U.S.C. § 1182(h)(2).

In a pair of cases, the BIA has concluded that the plain language of INA § 212(h)(2) bars consideration for relief for aliens legally admitted but that it allows consideration for relief for residents who entered the country illegally. *Compare In re Michel*, BIA Int.Dec. 3335 (1998) (holding that § 212(h) relief was available for *illegal* immigrant) *with In re Avala–Arevalo*, BIA Int.Dec. 3371 (1998) (holding that, notwithstanding *In re Michel*, no consideration could be given to § 212(h) claim by legal immigrant). Petitioner challenges this distinction as making an irrational distinction between individuals in favor of illegal immigrants and therefore violating equal protection.

language to determine whether the statute is retroactive. *Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483. However, once the statute is determined to be retroactive, the question still remains whether that retroactivity is *permissible* under the Constitution.

The Petitioner's challenge is to the *constitutionality* of the retroactive application. The fact that Congress made the retroactive change explicit does not affect whether or not

the change was *constitutional*. Nothing in *Landgraf* suggests that the Court should (or can) avoid a question of constitutionality merely because Congress was explicit about its desires.

To the extent that *Magana II* discusses the constitutionality of changes in the availability of discretionary relief from deportation, it is clearly both relevant and governing in this case.

### 1. The Statute Is Entitled to a Very Strong Presumption of Validity

■ As the government correctly observes, this Court reviews immigration statutes with a strong presumption that the statutes are valid, and should sustain legislative distinctions so long as they are based upon a "facially legitimate and bona fide reason." *Fiallo v. Bell,* 430 U.S. 787, 794, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977) (citations omitted). As the government further observes, there is no conceivable subject over which Congress has more complete legislative power than the admission of aliens. *Id.* at 792, 97 S.Ct. 1473. "Our cases 'have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Id.* (quoting *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 210, 73 S.Ct. 625, 97 L.Ed. 956 (1953)).

■ As the Supreme Court noted in *Fiallo,* "limits and classifications as to who shall be admitted are traditional and necessary elements of legislation in this area.... In the inevitable process of 'line drawing' Congress has determined that certain classes of aliens are more likely than others to satisfy national objectives without undue costs, and it has granted preferential status only to those aliens."

*Fiallo,* 430 U.S. at 796 n. 6, 97 S.Ct. 1473. As such, "in the exercise of its broad power of immigration and naturalization, 'Congress regularly makes rules that would be unacceptable if applied to citizens.'" *Id.* at 792, 97 S.Ct. 1473 (quoting *Mathews v. Diaz,* 426 U.S. 67, 80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976)).

■ Moreover, as the Ninth Circuit noted in *Runnett v. Shultz,* 901 F.2d 782, 787 (9th Cir.1990), the Court must uphold a distinction drawn by Congress in the immigration realm so long as there is a rational basis for the Congressional decision, whether the rational basis is articulated by Congress or not.[12]

■ Nevertheless, Congressional decisions on immigration are not free from all judicial review, and such decisions can be invalidated if there is no rational basis whatsoever for the distinction made. *Yeung v. INS,* 76 F.3d 337, 339 (11th Cir.1995);[13] *Raya–Ledesma v. INS,* 55 F.3d 418, 420 (9th Cir.1994).

### 2. The Government's Proposed Justification for the Distinction

In this case, the government contends that there is a rational basis for the distinction. The government suggests that Congress decided to allow illegal immi-

---

**12.** Indeed, as a general rule, it is well established that a challenged classification that does not involve a suspect class or impinge upon fundamental rights is accorded a strong presumption of validity. *Heller v. Doe,* 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). Such a classification must be upheld if it is rationally related to a legitimate governmental purpose. *Id.* at 320, 113 S.Ct. 2637. Moreover, under this minimal standard of review, the government need not actually articulate at any time the purpose or rationale supporting its classification. *Id.* Instead, a classification must be upheld against an equal protection challenge "if there is any reasonably conceivable set of facts that could provide a rational basis for the classification" whether the basis has a foundation in the legislative record or not. *Id.*

**13.** Virtually all of the recent equal protection challenges in immigration arise out of AED-

PA, and relate to the fact that deportable aliens in this country cannot qualify for § 212(h) relief, while excludable aliens seeking entry may qualify for this relief. Most of the appellate cases have upheld the distinction on the ground that Congress sought to remove those in custody here rapidly, while it had no need to pay to maintain those who were outside of the country seeking reentry. Moreover, the distinction gives deportable aliens an incentive to leave on their own (at their own expense) and seek reentry from outside of the country. *See, e.g., Wallace v. Reno,* 194 F.3d 279 (1st Cir.1999); *Requena–Rodriguez v. Pasquarell,* 190 F.3d 299, 308 (5th Cir.1999); *but see Yeung v. INS,* 76 F.3d 337, 339 (11th Cir.1995) (striking down distinction under equal protection grounds), *Gutierrez–Perez v. Fasano,* 37 F.Supp.2d 1166, 1173 (S.D.Cal.1999) (same).

grants one chance to prove to the Attorney General that they should be admitted. By contrast, the government says, legal immigrants have had their chance and abused it. The government notes that a lawful resident "enjoys greater rights than a non-immigrant alien and assumes commensurate responsibilities and duties," *Castillo–Felix v. INS*, 601 F.2d 459, 470 (9th Cir. 1979) (Tagasuki, J. dissenting),[14] and implies that one of these duties is a special duty to follow the law.

### 3. *Analysis of Government's Proposed Justification*

As the Ninth Circuit has noted, there are very logical reasons for treating lawful permanent residents *better* than illegal immigrants. *Castillo–Felix v. INS*, 601 F.2d at 466–467 (holding that only lawful *permanent* resident could qualify under statute requiring 7 years of lawful residence because permanent aliens had established closer ties to the United States). However, in this case, Congress has intentionally (or more probably unintentionally) created a distinction which treats lawful permanent residents *worse* than illegal immigrants.[15] It has created a distinction which therefore places an incentive on being an illegal immigrant rather than a legal immigrant and which punishes those with closer ties to the United States. As the Ninth Circuit noted in *Tapia–Acuna v. INS*, it is irrational to punish aliens more heavily simply because they have closer ties to the United States. *Tapia–Acuna v. INS*, 640 F.2d 223, 225 (9th Cir.1981), (superceded on other grounds by statute as recognized in *U.S. v. Estrada–Torres*, 179 F.3d 776, 778 (9th Cir.1999)) (quoting *Francis v. INS*, 532 F.2d 268, 273 (2d Cir.1976)) ("[N]o purpose would be served by giving less consideration to the alien 'whose ties with this country are so strong that he has never departed after his initial entry' than to the alien 'who may leave and return from time to time.' ").

Moreover, Congress has created a distinction which rewards those necessarily guilty of at least two crimes, illegal entry and the "aggravated felony," by treating them better than individuals guilty only of the same "aggravated felony." [16]

The Court does not consider the government's proposed justification rational. Although it is certainly true that additional duties can be imposed on legal residents, it does not make sense that one of those duties is a particular responsibility to follow the law. All individuals present in the United States have a duty to follow the law, and nothing about the position of legal

**14.** The Court notes that the government's citation to *Castillo–Felix* does not disclose that the language comes from Judge Tagasuki's *dissent* in *Castillo–Felix* rather than from the majority opinion in that case. The Court cautions counsel that the Court expects to see a higher level of professionalism.

**15.** Although the Court begins with the presumption that Congress has intended the plain meaning of the language, the Court also reaches the conclusion that there is no rational basis for that meaning. This suggests to the Court that perhaps Congress intended something different, and created this distinction by accident. In light of the generally constrictive approach in the IIRIRA towards illegal immigrants, it appears likely to the Court that Congress intended to preclude § 212(h) relief for *all* immigrants, legal or illegal.

Unfortunately, Congress did not express that intention. Instead, Congress used language which creates a distinction and the agency at issue has followed that distinction. The Court must therefore read the statute as it is written, and as it is written, the statute violates equal protection.

**16.** The fact that individuals may be convicted of exactly the same "aggravated felony" yet subject to different consequences distinguishes this case from the cases in which aliens have unsuccessfully argued that the distinction between similar crimes violates equal protection. *See, e.g., Rodriguez v. INS*, 9 F.3d 408 (5th Cir.1993) (rejecting claim that conviction of possession of sawed-off shotgun should be treated no worse than conviction of illegal firearms trafficking). Congress may certainly select those crimes that it views as particularly deplorable and expedite the removal of those convicted of such crimes. In this case, however, the Congressional scheme *rewards* an extra crime rather than punishing particularly disfavored crimes.

residents makes it more important that they follow the law than any other individual.

The Court has also attempted on its own to conceive of any possible rational justification, and has failed. This distinction simply defies logic, and as such, violates the equal protection clause of the Constitution.

## IV. CONCLUSION

As the Court has concluded that the denial of consideration for § 212(h) relief violates the equal protection clause of the United States Constitution, it is clear that Petitioner's deportation without such consideration would violate the law. As such, the Court hereby orders Defendant Immigration and Naturalization Service and all other named Defendants to STAY the execution of Petitioner's deportation during the pendency of this case.

IT IS SO ORDERED.