

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-11-2002

# De Leon-Reynoso v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 01-2774

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

## Recommended Citation

"De Leon-Reynoso v. Atty Gen USA" (2002). *2002 Decisions.* Paper 344.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/344

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed June 11, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-2774

LUIS ERASMO DE LEON-REYNOSO,
        Appellant

v.

JOHN ASHCROFT, ATTORNEY GENERAL; DORIS
MEISSNER, COMMISSIONER OF IMMIGRATION AND
NATURALIZATION SERVICE, DEPARTMENT OF JUSTICE;
CHARLES ZEMSKI, DISTRICT DIRECTOR INS

Appeal from the United States District Court
For the Eastern District of Pennsylvania
D.C. No.: 01-cv-00289
District Judge: Honorable Thomas N. O'Neill, Jr.

Argued: May 7, 2002

Before: NYGAARD, ALITO, and ROSENN, Circuit Ju dges

(Filed June 11, 2002)

        Martin A. Kascavage (Argued)
        Schoener & Kascavage
        400 Market Street, Suite 420
        Philadelphia, PA 19106

         Counsel for Appellant




        Joshua E. Braunstein (Argued)
        United States Department of Justice
        Office of Immigration Litigation
        P.O. Box 878
        Ben Franklin Station
        Washington, DC 20044

        Thankful T. Vanderstar
        Terri J. Scadron
        Suite 700S
        United States Department of Justice
        Office of Immigration Litigation
        1331 Pennsylvania Avenue, N.W.
        Washington, DC 20530

        Linda L. Bocchino
        Suite 1250
        Office of United States Attorney
        615 Chestnut Street
        Philadelphia, PA 19106

        Counsel for Appellees

OPINION OF THE COURT

ROSENN, Circuit Judge:

This appeal raises an important constitutional question
of first impression in this circuit. It pertains primarily to
the scope of Congressional authority over the nation's
immigration and naturalization laws. Luis Erasmo De Leon-
Reynoso (De Leon) appeals the denial by the United States
District Court for the Eastern District of Pennsylvania of his
habeas corpus petition challenging his deportation.
Because the District Court did not err in holding 8 U.S.C.
S 1182(h) constitutional and finding De Leon deportable
based on his conviction of a crime of moral turpitude in the
Commonwealth of Pennsylvania, the District Court's denial
of habeas relief will be affirmed.

I.

De Leon is a native and citizen of the Dominican
Republic, and has a spouse and child who are United

2

States citizens. He entered the United States as a lawful
permanent resident (LPR) on June 18, 1992. On June 12,
1997, De Leon was convicted in the Court of Common
Pleas, Northampton County, Pennsylvania, of receiving
stolen property. The court sentenced him to probation for
two years.

The Immigration and Nationality Act (INA), S 237
(a)(2)(A)(i), 8 U.S.C. S 1227(a)(2)(A)(i) provides for deportation
of an alien convicted within five years after admission into
the United States of a crime involving moral turpitude for
which a prison sentence of one year or longer may be
imposed. The Immigration Service initiated proceedings for
his deportation on the ground of the conviction and De
Leon appeared for a hearing before an immigration judge.
The judge found him deportable. The judge also found him
ineligible for adjustment of his status because he was
unable to qualify for a waiver under INA S 212(h), as
amended by Section 348(a) of the Illegal Immigration
Reform and Immigrant Responsibility Act of 1996, 8 U.S.C.
S 1182(h), because he had not been a legal immigrant in
the United States for seven years preceding the date the
removal proceedings were initiated. The immigration judge
also denied De Leon's request for voluntary departure,
finding that he lacked the requisite good moral character.

The Board of Immigration Appeals (BIA) affirmed the
immigration judge's decision and dismissed De Leon's
appeal. The BIA did not address De Leon's constitutional
challenge because it lacked the authority to hear it. On
January 19, 2001, De Leon filed a petition for habeas
corpus. The District Court denied the petition and De Leon

timely appealed to this Court.1 We exercise de novo review
of the District Court's denial of habeas relief and its
interpretation of statutes. Gerbier v. Holmes , 280 F.3d 297,
302 (3d Cir. 2002). Likewise, we exercise de novo review
over De Leon's constitutional challenge. DeSousa v. Reno,
190 F.3d 175, 180 (3d Cir. 1999).

---

1. We have appellate jurisdiction pursuant to 28 U.S.C. SS 1291 and
2253.

II.

A. Crime of Moral Turpitude

De Leon was convicted of receiving stolen property less
than a week under five years from the date he was admitted
to the United States. The Pennsylvania statute provides
that a person is guilty of theft if the person "intentionally
receives, retains, or disposes of movable property of another
knowing that it has been stolen, or believing that it has
probably been stolen." PA. CONS. STAT. ANN.S 3925(a).

Title 8 U.S.C. S 1227(a)(2)(A)(i) provides for the
deportation of aliens convicted of crimes that involve moral
turpitude, that are punishable by a year or more in prison,
and that are committed within five years of the date of
admission to the United States.

Whether an alien's crime is one involving moral turpitude
is determined by the statute and record of conviction rather
than the alien's specific act. See Alleyne v. INS, 879 F.2d
1177, 1185 (3d Cir. 1989) ("[T]he nature of an alien's crime
is determined by the statute and record of conviction, not
from the specific acts surrounding the conviction."). Thus,
merely examining De Leon's act to determine whether he
committed a crime of moral turpitude is insufficient; we
instead must look to the Pennsylvania statute.

The term "moral turpitude" defies a precise definition. 6
CHARLES GORDON, ET AL., IMMIGRATION LAW AND PROCEDURE
S 71.05(1)(d)(i). Black's Law Dictionary notes an "honesty"
component in its definition of moral turpitude, which
includes: "[c]onduct that is contrary to justice, honesty, or
morality." BLACK'S LAW DICTIONARY 1026 (7th ed. 1999); see
also 37 Op. Att'y Gen. 293, 294 (1933) ("A good and
comprehensive statement concerning 'moral turpitude' [is]
. . . . anything done contrary to justice, honesty, principle,
or good morals."); In re Serna, 20 I. & N. Dec. 579, 582 (BIA
1992) (citing Attorney General's definition with approval).

Courts have held that knowingly receiving stolen property
is a crime of moral turpitude. See, e.g., Michel v. INS, 206
F.3d 253, 262-63 (2d Cir. 2000) (applying Chevron
deference in concluding BIA reasonably determined

knowing possession of stolen property is crime of moral turpitude); United States v. Castro, 26 F.3d 557, 558 n.1 (5th Cir. 1994) (noting conviction for knowingly receiving stolen property is crime of moral turpitude); see also 6 CHARLES GORDON, ET AL., IMMIGRATION LAW AND PROCEDURE S 71.05(1)(d)(iii). Indeed, De Leon conceded at oral argument that a person who knowingly receives stolen property has committed a crime of moral turpitude.

De Leon argues, however, that the Pennsylvania statute not only criminalizes knowing possession of stolen property, but that it also includes an objective component that criminalizes possession of stolen property if one should have known it was stolen. De Leon therefore claims that his crime was not one of moral turpitude and leans heavily on In Re K, 2 I. & N. Dec. 90 (BIA 1944), as support for his position.

In re K involved a German statute providing criminal liability for, inter alia, any person concealing the purchase of goods "which he knows or must assume on the basis of the given conditions . . . have been acquired by means of any criminal act." Id. at 91. The BIA, focusing on the language "or must assume," determined that a"conviction may be founded upon the negligent receipt of property by a person acting in good faith," and that such a crime was not one of moral turpitude. Id. De Leon asserts that the Pennsylvania statute, which not only criminalizes knowing possession of stolen property, but also possession of stolen property when one "believ[es] that it has probably been stolen," is analogous to the German statute.

De Leon is incorrect; the Pennsylvania statute is purely subjective and lacks the objective component found in the German statute. The language in the Pennsylvania statute referring to a belief that the property probably has been stolen speaks to the specific defendant's belief and not the hypothetical reasonable person. The German statute, on the other hand, criminalized possession of stolen property if one "must assume on the basis of the given conditions" that the property was stolen. "Must assume" is objective; it does not require that the defendant assume theft of the property, but merely that he should assume it so. The objective component of the German statute is why the BIA

5

held it not to be a crime of moral turpitude. The Pennsylvania statute is, in contrast, subjective, and thus In re K is not apposite.

De Leon also argues that the Pennsylvania statute has been interpreted by the Pennsylvania courts as having an objective element. First, he cites Commonwealth v. Matthews, 632 A.2d 570, 573 n.2 (Pa. Super. Ct. 1993), for support. Matthews noted that it is permissible to infer guilty knowledge by the unexplained possession of stolen

property. Id. However, and contrary to De Leon's assertion, Matthews did not hold that there is an objective component to the statute. Inferring guilty knowledge does not mean that a reasonable person would have had such knowledge, but rather that the jury could infer from the circumstances that the defendant actually had such knowledge. As Judge Alito observed at oral argument in this case, "subjective intent is generally inferred from objective facts." The second case De Leon cites, Commonwealth v. Williams, 362 A.2d 244, 248-49 (Pa. 1976), stands for the same proposition as Matthews. Neither case injected an objective element into the Pennsylvania statute.

At a minimum, De Leon was convicted of possessing stolen property that he believed probably was stolen, a crime that is barely removed from possessing stolen property with knowledge that it is stolen. Both crimes speak with equal force to the honesty of a person. If knowingly possessing stolen goods is a crime of moral turpitude, it follows that possessing stolen goods that one believes probably are stolen is such a crime, too. It cannot reasonably be argued that a person willing to possess goods believing they were probably stolen exhibits less moral turpitude than a person who actually knows such goods are stolen. Accordingly, the District Court did not err in holding that De Leon committed a crime of moral turpitude subjecting him to deportation pursuant to 8 U.S.C. S 1227(a)(2)(A)(i).

B. Equal Protection

Deportable aliens who are married to United States citizens can seek relief from deportation by applying to

6

adjust their status to that of a permanent resident based on marriage. 8 U.S.C. S 1255. De Leon has a spouse who is a United States citizen. Under the statute, the Attorney General may, in his discretion, adjust the status of an alien in removal proceedings to that of an alien lawfully admitted for permanent residence if: (1) the alien makes an application for the adjustment; (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and (3) an immigrant visa is immediately available to him at the filing of the application. Id. S 1255(a).

An alien, however, is inadmissible to the United States if he has been convicted of a crime of moral turpitude. Id. S 1182(a)(2)(A)(I)(I). Thus, such an alien cannot satisfy the second requirement of S 1255(a). Because of De Leon's conviction, he had to apply for a waiver of the moral turpitude ground of inadmissibility under one of the waiver provisions in 8 U.S.C. S 1182(h) to be eligible for an adjustment of status.

Under S 1182(h), the Attorney General in his discretion may waive an alien's inadmissibility for a crime of moral

turpitude if the alien is a spouse, parent, or child of a United States citizen or permanent resident alien and can show that denial of admission would cause extreme hardship to the citizen or permanent resident alien. Id. S 1182(h)(1)(B). Congress amended this waiver provision in 1996 to prohibit eligibility if an alien previously has been admitted as a permanent resident and has then either (a) been convicted of an aggravated felony, or (b) not resided in the United States for seven continuous years. Id. S 1182(h).2

_____

2. The statute provides, in pertinent part:

> No waiver shall be granted . . . in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if either since the date of such admission the alien has been convicted of an aggravated felony or the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States.

8 U.S.C. S 1182(h).

Because De Leon had not resided in the United States for seven years, the immigration judge found him ineligible to adjust his status.

De Leon argues that S 1182(h) violates the equal protection component of the Fifth Amendment's Due Process clause by making an impermissible distinction between two categories of aliens who are not permitted to reside in the United States: those who have not previously been lawfully admitted to the United States (i.e., non-LPRs) and those who have been previously admitted to the United States but have not resided in the United States for seven consecutive years before removal proceedings are initiated (LPRs). See In re Michel, 21 I & N Dec. 1101, 1104 (BIA 1998) ("Section [1182(h)] . . . while specifically precluding waiver eligibility for a lawful permanent resident who has been convicted of an aggravated felony, imposes no such restriction on one who has not been admitted previously as an [LPR]."). De Leon asserts that this distinction allows a criminal alien who has never had permanent resident status in the United States, never acquired equities or familial ties, to secure a waiver, while those who have previously been admitted as lawful permanent residents, but with less than the seven years required residence, will be deported. Thus, he argues, the amendatory 1996 legislation is unconstitutional.

There is a "limited scope of judicial inquiry into immigration legislation." Fiallo v. Bell, 430 U.S. 787, 792 (1977). " '[O]ver no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." Id. (quoting Oceanic Navigation Co. v. Stranahan, 214 U.S. 320, 339 (1909)). The Supreme Court

has noted that its "cases 'have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.' " Id. (quoting Shaughnessy v. Mezei, 345 U.S. 206, 210 (1953)). In exercising its broad powers over immigration and naturalization, " 'Congress regularly makes rules that would be unacceptable if applied to citizens.' " Id. (quoting Mathews v. Diaz, 426 U.S. 67, 80 (1976)). The" 'power over aliens is of a political character and therefore subject only

8

to narrow judicial review.' " Id. (quoting Hampton v. Mow Sun Wong, 426 U.S. 88, 101 n.21 (1976) (citing Fong Yue Ting v. United States, 149 U.S. 698, 713 (1893)).

This Court applies rational basis review to equal protection challenges in the area of admission or removal of aliens. Pinho v. INS, 249 F.3d 183, 190 (3d Cir. 2001). Rational basis review does not empower "courts to judge the wisdom, fairness, or logic of legislative choices," and legislation subject to rational basis review has a strong presumption of validity. Heller v. Doe, 509 U.S. 312, 319 (1993) (quoting FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993)). Legislation is constitutional if there is a rational relationship between the disparate treatment and some legitimate governmental purpose. Id.  at 320. Moreover, Congress need not justify the purpose or reasoning to support its classification. Id. The legislation must be sustained if any reasonably conceivable state of facts provide a rational basis for the classification. Id.

In Song v. INS, 82 F. Supp. 2d 1121 (C.D. Cal. 2000), the District Court addressed the equal protection argument with respect to S 1182(h) in a context where the alien's aggravated felony rendered him ineligible for a waiver.3 The Court found S 1182(h)'s distinction between legal and illegal aliens irrational and therefore unconstitutional. Id. at 1133.

Song found that the legislation creates an incentive for one to be a non-LPR rather than an LPR and punishes those with closer ties to the United States. Id.  The Court held that it is irrational to punish aliens more severely for merely having closer ties to the United States. Id. The Court also found that the section rewards those who are guilty of two crimes (i.e., non-LPRs who have committed either a crime of moral turpitude or an aggravated felony are also committing a crime by their very presence in this country) by giving them greater consideration than LPRs who are

_____

3. Although most of the cases applying equal protection analysis to S 1182(h) have arisen in the context of waiver ineligibility due to an alien having committed an aggravated felony, the analyses equally apply in situations where alien ineligibility is due to the commission of a crime of moral turpitude.

9

guilty only of an aggravated felony or a crime of moral turpitude. Id.

Song further rejected the Government's argument that with the greater privileges bestowed upon LPRs comes a commensurately greater duty to follow the law. Id. The Court ruled that it is irrational to argue that one of the greater duties on LPRs is to abide by the law because all persons in the United States have such a duty, regardless of their status. Id. at 1133-34.

In contrast to Song, the Courts of Appeals addressing the issue have held that S 1182(h) is constitutional. In Lara-Ruiz v. INS, 241 F.3d 934 (7th Cir. 2001), the Court of Appeals noted several rational bases for S 1182(h)'s distinction. First, it stated that "[o]ne of Congress' purposes in enacting reforms . . . was to expedite the removal of criminal aliens from the United States." Id. at 947. The Court held that

> [w]hile it might have been wiser, fairer, and more efficacious for Congress to have eliminated . . . relief for non-LPR aggravated felons as well, the step taken by Congress was a rational first step toward achieving the legitimate goal of quickly removing aliens who commit certain serious crimes from the country, and as such it should be upheld.

Id.

The Court also noted that LPRs have rights and privileges based on their status that are not shared by non-LPRs, and that LPRs have closer ties to the United States through work and family. Id. "Therefore, Congress may rationally have concluded that LPRs who commit serious crimes despite these factors are uniquely poor candidates for . . . waiver of inadmissibility." Id.

Finally, the Court stated that in making LPRs ineligible for waiver, "Congress might well have found it significant that . . . such aliens have already demonstrated that closer ties to the United States and all of the benefits attending LPR status were insufficient to deter them from committing serious crimes." Id. at 948. Thus, it concluded that LPRs were a higher risk for recidivism and less deserving of a second chance than non-LPRs.

10

Both the Eighth and Eleventh Circuit Courts of Appeals, when deciding the issue, reached the same conclusion as the Seventh Circuit Court of Appeals. Lukowski v. INS, 279 F.3d 644, 647 (8th Cir. 2002) ("[Section] 1182(h) easily passes equal protection muster."); Moore v. Ashcroft, 251 F.3d 919, 925 (11th Cir. 2001). The Second Circuit Court of Appeals, although finding equal protection analysis inapplicable, likewise held that S 1982(h) is constitutional.

Jankowski-Burczyk v. INS, No. 01-2353 (2d Cir. May 29, 2002).

In addition to adopting much of the Court's reasoning in Lara-Ruiz, Moore also suggested that waiver eligibility only is theoretically available to illegal aliens. "Because illegal aliens are assumably removable at any time regardless of whether they have committed aggravated felonies in this country or not, Congress simply may have seen no need to emphasize in the statute that this class of individuals could not seek a waiver." 251 F.3d at 925. Although relief is theoretically available to non-LPRs, the Court held that it could not conclude that Congress acted arbitrarily or unreasonably in barring LPRs who commit aggravated felonies from seeking discretionary relief. Id. at 926.

Because Congress conceivably had good reasons to create the S 1182(h) distinction, we hold that the distinction survives rational basis scrutiny. Although Song was correct in stating that all persons have an equivalent obligation to lead lives within the confines of the law, Lara-Ruiz suggested at least two additional rationales for the S 1182(h) distinction.

First, Congress could have concluded that LPRs who commit crimes of moral turpitude, despite rights and privileges based on their status that illegal aliens do not share, are "uniquely poor candidates" for waiver. Second, LPRs with employment and family ties to the United States, who are still willing to commit serious crimes, are a higher risk for recidivism than non-LPRs who commit serious crimes but lack ties to the United States. Although these two rationales do not command enthusiasm, they form a plausible justification for the distinction made by Congress. In legislation aimed at the legitimate government interest of expediting the deportation of immigrants who commit

11

serious crimes in this country, we cannot say that the distinction between the two classes of aliens is irrational.

Moore's focus on the theoretical nature of illegal alien waiver eligibility is also cogent. Non-LPRs may always be excluded from the United States, regardless of whether they have committed serious crimes. Moreover, non-LPRs presumably lack the ties to obtain a relative to petition the Attorney General for adjustment of status. Accordingly, Congress may have seen no risk in excluding non-LPRs from the statutory class of persons eligible for waiver. This belief, that non-LPR waiver eligibility is more theoretical than real, is also rational, and could have led Congress to omit non-LPRs in S 1182(h).

Our holding that the S 1182(h) distinction survives rational basis scrutiny should not be mistaken for an endorsement of the policy. We urge Congress to reconsider the ramifications of entirely eliminating the Attorney General's discretion in this area. At times, pathetic, heart-

wrenching pain for families and burdensome consequences for employers and taxpayers accompany removal proceedings. De Leon's wife and child, who are United States citizens, will now become a single-parent family. Whether they can sustain themselves or will be a burden to society remains to be seen. Furthermore, the Commonwealth of Pennsylvania did not believe that De Leon's criminal act warranted incarceration; the court sentenced him to two years of probation.

Although Congress's goal of expediting the removal of criminal aliens is understandable and even praiseworthy, denying the Attorney General of the United States the discretionary power to adjust the status of a lawful permanent alien who has committed a crime of moral turpitude, regardless of the circumstances of the crime and his familial conditions, can be harsh, self-defeating, and unwise.4

_____

4. Judge Alito does not join the final two paragraphs of Part II of this opinion. Having concluded that the challenged statutory provision is constitutional, he expresses no view regarding its wisdom.

12

III.

In summary, the District Court did not err in concluding that De Leon committed a crime of moral turpitude. The Court also committed no error in determining that 8 U.S.C. S 1182(h) does not violate the equal protection component of the Fifth Amendment's Due Process clause. The order of the District Court will be affirmed. Each side to bear its own costs.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

13